In re the MARRIAGE OF Jerry Lee
PARRETT and Janet
Louise Parrett.

Jerry Lee PARRETT, Respondent,

v.

Janet Louise PARRETT, Appellant.

No. 16748.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 15, 1990.

W. Henry Johnson, Douglas, Douglas & Johnson, Neosho, for appellant.

Marily A. Braun, Springfield, for respondent.

CROW, Judge.

Janet Louise Parrett ("Janet") appeals from a judgment entered November 27, 1989, granting a motion by her ex-husband, Jerry Lee Parrett ("Jerry"), to terminate the maintenance he had been ordered to pay her in a decree entered March 17, 1983, dissolving their marriage. The issues we must address require a brief chronological narrative.

Janet and Jerry married each other September 10, 1966. A daughter, Joy Lynn Parrett, was born February 28, 1967; a son, Jared Lee Parrett, was born August 9, 1972. Janet and Jerry separated January 8, 1983, and shortly thereafter filed a joint petition for dissolution of marriage. At the dissolution hearing they presented to the circuit court a written separation agreement and property settlement providing, among other things, that Jerry would pay Janet maintenance of $300 per month. The circuit court found the agreement was not unconscionable and approved it. In addition to providing for the agreed maintenance, the dissolution decree granted Janet custody of both children and ordered Jerry to pay child support of $100 per month per child.

On March 24, 1983, Jerry married his present wife, Rebecca.

On June 19, 1987, Jerry filed a motion to modify the dissolution decree, averring that the child Joy Lynn was employed and had become emancipated, and that Janet had obtained appropriate employment sufficient to provide for her reasonable needs and had experienced a substantial increase in income since the dissolution. Jerry prayed the circuit court "to abate the maintenance" and to modify the child support to a sum that was reasonable in light of the changed conditions.

Janet filed a cross-motion seeking an increase in maintenance and additional child support for Jared.

Those issues were tried June 2, 1988. In a judgment entered June 21, 1988, the circuit court denied Jerry's motion to abate maintenance and denied Janet's cross-motion to increase maintenance, finding that each party had "failed to show changed circumstances so substantial and continuing as to require any modification of the maintenance award made by the dissolution court." The judgment terminated the child support for Joy, raised the child support for Jared to $225 per month, and ordered Jerry to pay $1,000 toward Janet's attorney's fee.

Jerry filed a notice of appeal to this Court, but voluntarily dismissed his appeal September 12, 1988.

On February 23, 1989, Jerry again filed a motion in the circuit court to terminate maintenance. The motion pled that Janet had employment sufficient to provide for her reasonable needs, that Jerry had been required to borrow substantial sums to satisfy the previously ordered maintenance, that his ability to borrow further sums was exhausted, that Rebecca had been required to use money borrowed for her education to help Jerry make the maintenance payments, that student loans owed by Jerry and Rebecca would become due in September, 1989, and that those obligations would greatly reduce Jerry's ability to pay maintenance.

Janet countered with a cross-motion seeking increases in maintenance and the child support for Jared, together with an award of attorney fees.

Jerry applied for, and was granted, a change of judge from the one who had entered the 1988 judgment.

Trial was held November 13, 1989. Two weeks later the circuit court entered judgment terminating maintenance after the May, 1990, payment. Additionally, the judgment raised the child support for Jared to $350 per month effective June 1, 1990, and ordered each party to pay his own attorney's fee.

Janet brings this appeal from that judgment.

Most of the evidence was undisputed. Jerry, born December 2, 1945, received a bachelor of arts degree from Southwest Baptist University in 1969. He acknowledged that on February 17, 1988, in connection with the first modification proceeding, he had answered an interrogatory regarding his earnings by stating his monthly gross earnings were $1,333.33, and his monthly net earnings were $932.64. At that time he was employed by the Crane R–3 School District.

During the 1988–89 school year, as we understand Jerry's testimony, his earnings totaled $19,000. At that time Rebecca was attending college, pursuing a degree in elementary education. She graduated in May, 1989.

Jerry received a "master of science and education" degree from Southwest Missouri State University in August, 1989. At that time he commenced employment at the Bucklin R–2 School District as an elementary and secondary principal at an annual salary of $30,000. Simultaneously, Rebecca commenced employment by the same school district as a teacher at an annual salary of $18,000.

At trial, Jerry presented a document showing his net monthly pay is $1,864.51 and Rebecca's net monthly pay is $1,132.00. Additionally, Rebecca receives $425 per month from her ex-husband for "Child Support & Arrears." Those three amounts total $3,421.51.

The child support Rebecca receives is for two children: Tonya Davis (age 20 at time of trial), and Brad Davis (age 18 at time of trial). They are "full-time students" at Southwest Missouri State University.

Jerry and Rebecca own a home in Nixa, valued by Jerry at $65,000. Jerry testified that in the summer of 1989 he refinanced it for $47,000, the maximum the lending agency would allow. He makes a monthly payment of $472 "on a 30–year note including taxes and insurance." His stepchildren, Tonya and Brad, reside there.

Jerry and Rebecca live in an apartment in Brookfield (near their employment) which they rent for $213 per month. On week-ends they return to the Nixa home.

Jerry's evidence showed his average monthly expenses are $3,586.74. This includes, among other things: (a) the house payment, (b) the apartment rent, (c) $225 child support, (d) $300 maintenance, and (e) $262.50 described by Jerry as "past due arrearages" of child support and maintenance. At time of trial the arrearages totaled some $3,200, including interest. Jerry acknowledged he had "been under a wage assignment for quite some time."

Jerry's monthly expenses also include utilities for both residences, telephones for both residences, and food for both residences.

Jerry testified he and Rebecca drive a 1984 Ford Mustang. His stepson, Brad, drives a 1982 Pontiac Grand Prix. Operating expenses and routine maintenance for those vehicles total $225 per month. In addition, Jerry makes a $300 loan payment each month on the vehicles.

At time of trial Jerry and Rebecca were paying $119.24 per month on student loans, the proceeds of which had been spent on living expenses and their respective educations. Jerry testified that in May, 1990, additional student loans will become due, increasing the monthly payments to $361.25. Jerry explained that both he and Rebecca will have to fulfill additional educational requirements by 1994 to maintain their employment. This will require further expenditures.

Janet, born December 2, 1946, testified she received a teaching certificate in 1971. She did "substitute teaching" in Noel and Neosho for several years and taught full time at Neosho for a six-month period during one school year (1983–84). She applied for the same position the ensuing year but was turned down.

In October, 1984, Janet obtained employment as a "secretary/receptionist" in Neosho. She still had that job at time of trial. She works 40 hours per week at an hourly salary of $6.25, amounting to gross annual

earnings of $13,000. She had not received a raise since the 1988 hearing. Janet's only other earnings at time of trial were approximately $80 per month for working in a church nursery.

Joy, age 22 at time of trial, and Jared, a 17-year-old high school junior at time of trial, reside with Janet. Joy, who earns about $100 per week, pays Janet nothing for room and board. Joy does, however, bear all of her own automobile expenses. Janet's automobile insurance premium had increased since the 1988 hearing because Jared had begun driving.

Some of Janet's other monthly expenses had also increased since the 1988 hearing. She was paying more for utilities, gasoline, food, and Jared's school lunches and allowances. Additionally, she has a monthly car payment of $210. She explained she had purchased "[a]n '88 Corsica" in August, 1989, because "Jared wrecked my other one." In the aggregate, Janet's monthly expenses, according to her, had increased by over $200 since the 1988 hearing.

Janet admitted seeking no teaching position since being rejected for the full time position at Neosho in 1984. She also conceded she had looked for no other employment since the 1988 hearing. Asked why, Janet replied, "Around Neosho there's not that many job openings."

The trial court's judgment was unaccompanied by findings of fact and conclusions of law, none having been requested.

Janet's brief presents two points. The first avers the trial court erred in prospectively terminating maintenance in that there was no substantial evidence to support such termination, as Jerry did not show a change of circumstances so substantial and continuing as to make the prior order unreasonable. Janet points out that less than a year elapsed between the 1988 judgment denying modification of maintenance and Jerry's current motion to terminate it. Janet argues (1) Jerry did not show what his expenses were at the time of the 1988 hearing, and any increase in his expenses were essentially temporary in nature and incurred voluntarily, (2) Janet's income had not increased, nor had her needs diminished since the 1988 hearing, and Jerry's income had nearly tripled since then, (3) there was a great disparity between the incomes of Jerry and Janet, and he had the ability to meet his own needs while meeting the maintenance obligation, and (4) Janet had made a good faith effort to support herself, had held the same job for five years, had earned additional income from part-time employment, and could not be expected to locate different employment.

Section 452.370.1, RSMo Supp.1988, provides, in pertinent part: "... the provisions of any decree respecting maintenance ... may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable."

■ In a motion to modify a maintenance award, the burden of proof is on the party seeking the modification to show that the parties' circumstances have changed and that those changes have been so substantial and continuing as to make the maintenance provision unreasonable. *Dow v. Dow,* 728 S.W.2d 714, 716[1] (Mo.App. 1987); *Eaton v. Eaton,* 637 S.W.2d 799, 800[1] (Mo.App.1982). The statutory standard for modification is intended to be strict so as to discourage recurrent and insubstantial motions for modification. *Dow,* 728 S.W.2d at 716; *Magaletta v. Magaletta,* 691 S.W.2d 457, 458[1] (Mo.App. 1985).

Jerry's evidence, as we fathom it, showed he and Rebecca had taken out student loans totaling over $21,000. Of that sum, says Jerry, at least $12,434.84 was borrowed in 1988 and 1989. Jerry also reminds us that the Nixa home was refinanced after the 1988 hearing, and that he and Rebecca will have to incur educational expense in the future to maintain their current employment. These factors, according to Jerry, constitute a substantial

and continuing change in circumstances since the 1988 hearing.

Janet asserts that during the interval between the 1988 judgment and the 1989 trial, Jerry's income nearly tripled. Furthermore, says Janet, all of the student loans were either acquired prior to the 1988 hearing or were anticipated at that time. Consequently, argues Janet, there were insufficient changes in circumstances since the 1988 hearing to justify termination of maintenance.

It is clear that Jerry's individual income has not increased threefold since the 1988 hearing. At that time, as we comprehend Jerry's testimony, his annual salary (for the 1987–88 school year) was $16,000, and he was paid an additional $1,000 "to do plays." When the instant modification proceeding was tried, Jerry's annual salary was $30,000.

Jerry's own evidence, however, showed that Rebecca earns an annual salary of $18,000 and that she receives a total of $425 per month for current child support plus arrearages. At the time of the 1988 hearing, Rebecca was attending college, was unemployed, and was receiving no child support. The annual income in Jerry's household thus rose from $17,000 at the time of the 1988 hearing to $53,100 (including Rebecca's child support) at the time of the 1989 hearing.

Jerry's proof did not identify his monthly expenses separately from Rebecca's; instead, his evidence showed their monthly expenses in the aggregate. May we therefore consider Rebecca's contributions to the household income in determining whether Jerry's ability to pay maintenance decreased between the 1988 hearing and the 1989 hearing?

In *Davis v. Davis*, 620 S.W.2d 6, 7 (Mo. App.1981), an appeal from a denial of an ex-husband's motion to decrease maintenance to his ex-wife, the Eastern District of this Court noted that the ex-husband's new wife was contributing toward expenses he claimed against his earnings.

In *Zalar v. Harrington*, 786 S.W.2d 883, 885 (Mo.App.1990), an appeal by an ex-husband from an order granting his ex-wife's motion to modify the maintenance provision of their dissolution decree, the Eastern District of this Court affirmed, noting that the ex-husband's annual income had increased since the dissolution and he was sharing living expenses with his new wife who had a substantial annual income of her own.

In *Mendelsohn v. Mendelsohn*, 787 S.W.2d 321 (Mo.App.1990), an appeal by an ex-wife from an order granting her ex-husband's motion to reduce the maintenance awarded in their dissolution decree, the Eastern District of this Court reversed, noting that the ex-husband had married a new wife who had income of her own, and that his expenses had declined when he moved into her residence and began sharing expenses with her. *Id.* at 323.

■ It is thus proper in the instant case to consider that when the 1988 judgment was entered, the only funds available to meet Jerry's monthly expenses—and those of Rebecca—were Jerry's earnings (and the proceeds of the student loans). Since then, Jerry's annual earnings have increased from $17,000 to $30,000, Rebecca's annual earnings have risen from zero to $18,000, and she has begun receiving $425 per month in child support and arrearages. These funds are applied by Jerry and Rebecca to their combined expenses. While their payments on the student loans will increase, there is no evidence to support a finding that Jerry is less able now to pay maintenance than he was at the time of the 1988 hearing. If the trial court erred in 1988 in denying Jerry's prayer to terminate maintenance—an issue that is not before us—the error could have been corrected on appeal. However, as we have seen, Jerry dismissed his appeal from that judgment.

■ The period of time to which we look to determine whether there has been a change in circumstances warranting modification of maintenance begins with the

prior order denying modification. *Hopkins v. Hopkins*, 591 S.W.2d 716, 720 (Mo.App. 1979). Consequently, the issue in this appeal is not whether the 1988 judgment was correct, but whether there has been a change in circumstances since then justifying termination of maintenance.

Janet's evidence showed her monthly expenses had increased since the 1988 judgment. That evidence was uncontradicted. Janet's testimony that she had received no salary increase since the 1988 judgment was likewise undisputed.

Citing *Oldfield v. Oldfield*, 767 S.W.2d 134 (Mo.App.1989), and *Markowski v. Markowski*, 736 S.W.2d 463 (Mo.App.1987), Jerry asserts that Janet's "failure to take any positive steps to improve her situation [justifies] the trial court's prospective termination of her maintenance award." According to Jerry, Janet's "lifetime teaching certificate" qualifies her to hold a teaching position without ever having to meet any further educational requirements. Jerry's evidence showed that in Missouri a teacher is guaranteed an annual salary of at least $18,000.

Janet has held her present job since October, 1984, thus there has been no change in her employment since the 1988 judgment. As noted earlier, the trial court in 1988 denied Jerry's motion to terminate maintenance and Janet's cross-motion to increase maintenance, finding that each party had failed to show changed circumstances so substantial and continuing as to require any modification of the maintenance award. If the trial court, in 1988, should have terminated maintenance because of Janet's failure to obtain a higher paying job, Jerry's remedy was to obtain appellate review of the 1988 judgment. Instead, he abandoned his appeal and commenced a new proceeding to terminate maintenance eight months later, presenting his plea to a different judge.

More importantly, however, the two cases cited by Jerry do not support termination of maintenance in the instant case.

In *Oldfield* the ex-wife had obtained employment after the dissolution, but quit a short time before the hearing on the ex-husband's motion to modify maintenance. Affirming an order terminating maintenance, the Eastern District of this Court held the ex-wife was under a continuing duty to exert reasonable efforts to attain self-sufficiency and would not be permitted to benefit from inaction. 767 S.W.2d at 136[3]. In *Markowski* the ex-wife, for seven years following the dissolution, developed no source of income to contribute anything toward her own support despite having formerly worked as a teacher and a museum curator. The Western District of this Court held that failure of a supported spouse to make a good faith effort to seek employment and achieve financial independence within a reasonable time may form the basis for modification of a maintenance award, hence the trial court did not abuse its discretion in ordering termination of maintenance. 736 S.W.2d at 466.

In the instant case Janet applied for a full time teaching position in Neosho for the school year 1984–85 and was rejected. Her teaching certificate obviously did not get her the job. Jerry admitted that in the spring of 1989 he applied for employment at 35 schools "all over the state of Missouri" but was offered only the job at Bucklin.

Janet has not remained idle since the dissolution. She has held the same full time job since 1984, and has supplemented her earnings by part-time work at the church. *Oldfield* and *Markowski* are inapplicable.

The scope of our review in this judge-tried case is set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976). We must sustain the judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Moseley v. Moseley*, 744 S.W.2d 874, 877[2] (Mo.App.1988). We recognize that the trial court had the prerogative to deter-

mine the credibility of the witnesses, accepting or rejecting all, part or none of the testimony, and that we must accept as true the evidence and permissible inferences therefrom favorable to the prevailing party and disregard the contradictory evidence. *Ware v. Ware,* 647 S.W.2d 582, 583–84 (Mo.App.1983). We are also mindful that where, as here, no fact findings were requested or made, all facts are deemed to have been found in accordance with the result reached. *Irwin v. Irwin,* 678 S.W.2d 861, 862[2] (Mo.App.1984).

Those rules, however, do not insulate the order terminating maintenance from reversal. Here there was simply no evidence of a change in circumstances since the 1988 judgment that would support a termination of maintenance. As observed earlier, Jerry is at least as able now to pay maintenance as he was at the time of the 1988 judgment, Janet's needs have not diminished since then, and her employment and salary have remained unchanged.

It is true, of course, that the child support for Jared was ordered increased effective June 1, 1990. Whether that ruling was correct is not before us, however, as Jerry did not appeal. Furthermore, the child support for Jared will terminate upon his emancipation. See §§ 452.340.3–452.340.5, RSMo Cum. Supp.1989.

We hold that the termination of maintenance was unsupported by substantial evidence, hence it cannot stand. In so deciding, we are not oblivious to Jerry's financial situation. Until Jared—and Rebecca's two children—are emancipated, Jerry may have little, if any, extra money. Careful budgeting will obviously be essential. That, however, supplies no basis for terminating maintenance. It was Jerry's burden to show a change in circumstances since the 1988 judgment so substantial and continuing as to make the maintenance award unreasonable. There was no substantial evidence to support such a finding. Janet's first point is thus meritorious and requires reversal of that portion of the November 27, 1989, judgment terminating maintenance.

Janet's second point asserts the trial court erred in denying her prayer for attorney fees.

An award of attorney fees in a proceeding to modify a decree of dissolution is within the discretion of the trial court and its decision will be overturned on appeal only if discretion is abused. § 452.355.1, RSMo Supp.1988; *Seelig v. Seelig,* 540 S.W.2d 142, 147–48[12] (Mo.App.1976).

The parties' respective financial resources have been set forth in detail earlier in this opinion. Neither has excess funds. We hold that the trial court's determination that each party should pay his own attorney's fee is supported by substantial evidence, is not against the weight of the evidence, that no error of law appears, and that a discussion of the attorney fee issue would have no precedential value. Accordingly, that portion of the judgment is affirmed in compliance with Rule 84.16(b), Missouri Rules of Civil Procedure (1990).

The portion of the judgment of November 27, 1989, terminating maintenance after the May, 1990, payment is reversed. In all other respects the judgment is affirmed.

MAUS, P.J., and PREWITT, J., concur.