Harold Leon CRAWFORD, Respondent,

v.

Mary Sue CRAWFORD, Appellant.

No. WD 54232.

Missouri Court of Appeals,
Western District.

March 9, 1999.

Nancy A. Beardsley, Blue Springs, for Respondent.

David E. Elliott, Lee's Summit, for Appellant.

Before: Presiding Judge BRECKENRIDGE, Judge LOWENSTEIN and Judge SPINDEN.

LOWENSTEIN, Judge.

The marriage of Harold Leon Crawford (Leon) and Mary Crawford (Mary) was dissolved in 1982. The custody of the couple's three children was awarded to Mary. Child support was decreed at $166.66 per month per child, to be paid by Leon. Periodic maintenance in the amount of $400 was ordered paid by Leon to Mary.

In September 1995, Mary filed a motion to modify the amount of child support. Her

motion stated that the oldest child, Kimberly, was emancipated, but asked for an increase for the remaining children, Laura, born in 1976, and Susan, born in 1978, due to a change of circumstances which included: a) necessary expenditures had increased; b) Laura was in college; and c) Harold had remarried, his income had increased, and the new guidelines in Rule 88.01, when applied to the financial circumstances of both parties, would result in an increase in support by more than twenty percent.

Leon was served on September 28, 1995. Leon's attorney withdrew, never having filed a timely answer on Harold's behalf. His new counsel filed a motion for leave to answer and filed a counter-motion to modify out of time. This motion was granted, with Leon filing the answer and counter-motion on December 12, 1996. Leon admitted that his income had increased and asked that any support be paid directly to the two children. His counter-motion prayed maintenance be terminated, and he be given both exemptions for the children on his income tax return.

On January 14, 1997, Mary filed a reply and answer to the cross-motion, claiming neither she nor her attorney had ever been properly served with Harold's counter-motion. Rule 43.01(a) and (b).

After trial a "judgment" signed by a Commissioner was entered containing the following items: a) termination of maintenance, b) an increase in child support for Laura, a sophomore in college and Susan, a high school senior, to $525.25 each per month, c) a declaration of $8,808 in retroactive child support due from Leon, d) a declaration of emancipation of the oldest child, Kimberly, e) a declaration that allowed Leon to claim Laura as a dependent for tax purposes, and, f) an order requiring Leon to pay $750 toward Mary's attorney fees. The case was argued. It was then discovered that a judge had not entered the judgment, so the case was, in light of *Slay v. Slay*, 965 S.W.2d 845 (Mo. banc 1998), remanded back to the Circuit Court under the auspices *of State ex rel. York v. Daugherty*, 969 S.W.2d 223 (Mo. banc 1998) for entry of a judge signed order. A judgment was entered adopting the above

mentioned findings and recommendations of the Commissioner.

Mary's appeal raises eleven points. Review is under *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The burden is on the appellant to show error amounting to an abuse of discretion. *Woolridge v. Woolridge*, 915 S.W.2d 372, 375 (Mo.App.1996).

### I.

■ The first point alleges the trial court lacked personal jurisdiction over her to hear Leon's counter-motion to terminate maintenance, and to allow him to claim either of the daughters for a tax exemption since he had failed to comply with Rule 43.01(a), when he did not serve Mary or her attorney with proper notice. Rule 43.01(a) requires every pleading subsequent to the original petition to be "... served on each of the parties affected thereby...." Subsection (b) allows service to be made on any party through the party's attorney. Subsection (c) allows service to be accomplished by mail, and is "complete upon mailing." Subsection (d) states service may be shown "... by written certificate of counsel making such service." The legal file shows, and the trial court noted, that the motion to file out of time did show a certificate of service by Leon's attorney, and some eight days later, Mary's attorney filed strenuous suggestions in opposition. Leave was granted to file the counter-motion on December 12, 1996. That same day, Leon filed his answer and counter-motion to modify, but the certificate of service shows the date of mailing to Mary's attorney, as November 27th, 1996. Mary filed a reply and answer to the counter-motion on January 14,1997. Mary's point is the attempted service dated fifteen days *before* the counter-motion was filed was void and did not confer jurisdiction to adjudicate the counter-motion.

■ The Commissioner's findings and recommendations which were adopted by the trial court are instructive on this point: "The fact that there was a reply and answer filed on [Mary's] behalf shows that there was notice to counsel of the pleading. This Court has jurisdiction over [Mary] with regard to [Leon's] counter-motion to modify." The spirit behind procedural rules such as Rule

43 is to "... ensure the orderly resolution of disputes and to attain just results. They are not ends in themselves. For this reason, we do not generally consider noncompliance with rules or statutory procedures to warrant reversal in the absence of prejudice." *Heintz v. Woodson,* 758 S.W.2d 452, 454 (Mo. banc 1988). In the case at bar, Mary had actual notice of the counter-motion, even though the service date was incorrect. She timely filed a response, and having received actual notice, is not in a position to complain of prejudice for the failure to receive the strict statutory notice. *Macon–Atlanta State Bank v. Gall,* 666 S.W.2d 934, 940 (Mo.App.1984). Without a showing of prejudice from the technical non-compliance of the certificate of service, nor the lack of reasonable notice on issues raised, the complaining party may not expect a reversal. *Heintz v. Woodson,* 758 S.W.2d at 453—54; *Burton v. Everett,* 845 S.W.2d 710, 713 (Mo.App.1993); Rule 84.13(b).

## II.

Mary raises three points regarding the court's terminating maintenance of $400 per month. All these issues will be treated in this point. Mary states there was insufficient evidence to support the necessary statutory findings and conclusions resulting in a conclusion of termination of previously decreed maintenance. She asserts the trial court failed to list sufficient findings to support this portion of the judgment. Particularly, she contests the finding that she was capable of meeting her own needs, and that if maintenance were not discontinued, Leon could meet his reasonable needs. She correctly asserts Leon, as movant on the termination of maintenance issue, had the burden of proof. The pertinent portion of § 452.370.1., RSMo 1994 [1] reads:

> Except as otherwise provided in subsection 6 of section 452.325, the provisions of any decree respecting maintenance or support may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable. In a proceeding for modification of any child support or maintenance award, the court, in determining whether or not a

substantial change in circumstances has occurred, shall consider all financial resources of both parties, including the extent to which the reasonable expenses of either party are, or should be, shared by a spouse or other person with whom he or she cohabits, and the earning capacity of a party who is not employed.

Not every change of circumstances will automatically justify a modification of an original dissolution decree, as these motions will be "appropriate only in unusual situations." *McKinney v. McKinney,* 901 S.W.2d 227, 229 (Mo.App.1995). Though the burden for proof of substantial change is on the movant, *Halliday v. Boland,* 813 S.W.2d 34, 37 (Mo.App. 1991), under the scope of review of Rule 73.01(c), the trial court's judgment is presumed valid and the burden is on the appellant to demonstrate the judgment was incorrect. *Norman v. Norman,* 916 S.W.2d 209, 210 (Mo.App.1995).

The following findings were made on Leon's counter-motion to terminate maintenance.

4. At the time of the dissolution, Respondent was unemployed, but immediately started working as reflected in her 1982 tax return. She has been working since the dissolution, except for a period of time after her lay-off from Yellow Freight in 1994. When at Yellow Freight, she had earnings of over $26,000 per year. She now works full time as a secretary grossing $22,000 per year. She also works part-time at Price Chopper, earning an additional $325 per month. Her total gross monthly earnings are $2,158.

5. Petitioner is employed and grosses $85,000 per year, $7,083 per month. At the time of the dissolution, he was earning $48,000 per year. He has remarried and has a child born of that marriage. He maintains family health and dental insurance coverage; the cost attributable to the children of this relationship is $34 per month. As he is not the movant in this motion to modify child support, he is entitled to a

---

1. All further statutory references will be to the Revised Statutes of Missouri, 1994.

credit for the child of the second marriage in the amount of $816.

12. Respondent is capable of meeting her own needs through her present employment. Respondent has an affirmative duty to seek self-sufficiency through employment, and has done so since the dissolution 15 years ago. Petitioner will be paying double the present amount of child support, and along with his other expenses, will not have sufficient financial resources to meet his own reasonable needs, and also continue to pay maintenance to Respondent. There have been changed circumstances pursuant to Section 452.370.1 RSMo., so substantial and continuing as to make the terms regarding maintenance unreasonable.

The trial court spelled out Mary's rising income and increase in job skills since the dissolution, her lack of credibility by grossly overstating many of her living expenses and debts, and, though not relevant to the subject of maintenance, overstating the expenses and debts generated by the two unemancipated children. Conversely, Mary has taken on a weekend job working six hours on Saturday and Sunday, to supplement her regular earnings.

While Mary is correct in noting the issue of maintenance is separate and distinct from the issues of child support in that maintenance is relevant to her needs, while the support payments provide for the children's needs, *McKinney*, 901 S.W.2d at 228, the trial court did not commingle the maintenance issue with child support. The findings quoted above bore out the finder's disbelief of most of the expenses stated by Mary. The court was within its bounds in arriving at Leon's ability to pay maintenance along with the increase imposed in the decree upon him for support. There is no doubt that Leon makes more that Mary, but the court simply disbelieved Mary's figures as to her expenses. The court also found many of Mary's expenses to only be estimates. The above-quoted portions of the judgment relating to maintenance are further articulated in those portions relating to support of the two

unemancipated children, which will be set out below. The fact remains, that Mary works two jobs and has improved herself, which is admirable. While the court cannot deny Mary overstated her expenses, her income from working two jobs is still below her reasonable needs to be self-supporting. Maintenance should not have been terminated; however, on the evidence here, Mary is not self-sufficient. There was insufficient evidence to support a termination. *Parrett v. Parrett*, 793 S.W.2d 911, 917 (Mo.App.1990); *Wilburn v. Wilburn*, 801 S.W.2d 78, 80 (Mo. App.1991). There was sufficient evidence to modify, without entering "the miry bog of judicial second guessing," *In re Marriage of Dildy*, 737 S.W.2d 756, 760 (Mo.App.1987). The court, pursuant to Rule 84.14, reverses of the portion of the judgment completely terminating maintenance, but reduces the amount of maintenance to $325.00 per month.

### III.

■ Mary's next three points on appeal relate to the amount of child support awarded for daughters Laura and Susan. The court awarded the chart amount. These points relate to the court's failure to add on extraordinary expenses. Those points will be discussed in this section. The following judgment language is apropos:

3. Kimberly is married, over age 22, and emancipated. Laura is presently attending college full-time at CMSU. Susan has not yet graduated high school. The evidence was contradictory as to whether Susan was attending school, whether an alternative high school or Lee's Summit High School. Respondent stated the child was not taking school courses now, but intended to. When Susan will graduate high school is unknown.

6. Respondent has argued that Laura's college expenses and Susan's anticipated college expenses should be part of the Form 14 calculation as an extraordinary expense. First, the post-secondary expenses are not agreed upon by the parties. Therefore, it is with the Court's discretion pursuant to the Form 14

Comments for Use, as to whether to include such an expense.

Regarding Susan, whether she will attend college is speculative. She has not graduated high school, and testimony indicated she may not even be attending classes at this time. Respondent stated the child would be attending Longview Community College, and living outside the home, and would have college expenses of over $700 per month. She then testified that the child was thinking about attending the University of Missouri at Columbia. Respondent's anticipated monthly expenses for Susan of $784 per month in college is speculative, at best, as to those expenses.

Laura is presently attending college, receives scholarships, loans and works part-time. There was no evidence presented to prove the cost of tuition, room and board, books, or fees. Respondent only presented a summary. Further, there are other expenses listed in that summary for credit card charges, a pager, and furnishing an apartment (apparently every year). Apparently, additional expenses for a car are included in Respondent's income and expense statement. Even if there was underlying evidence to support these costs, such costs are far beyond the cost of annual tuition, room and board to be considered as extraordinary expenses included in a Form 14 calculation. Further, the Court is to consider scholarships, grants, stipends, and other cost reducing programs. Laura received over $5,450 in grants and loans for the 1996–97 school year.

The Court does not find it reasonable to include extraordinary post-secondary expenses in the Form 14 calculation.

7. The Court finds the presumed correct child support amount as calculated by Petitioner pursuant to Section 452.340.8, Rule 88.01, and Form 14 is $1,050.50, $525.25 per month per child; and after consideration of all relevant factors pursuant to Section 452.340.8 and Rule 88.01, is not rebutted as being unjust or inappropriate. The application of the guidelines results in a change in the child support amount by more than twenty percent, therefore Respondent has made a prima facia showing of a change in conditions and circumstances so substantial and continuing as to make the present terms unreasonable.

8. The Court finds it reasonable that the child support award be made retroactive to October, 1995. The retroactive child support due and owing $8,808.

9. The Court finds the presumed correct child support amount is $1,050.50 per month, and after consideration of all relevant factors pursuant to Section 452.340.8 and Rule 88.01, is rebutted as being unjust and inappropriate with regard to unreimbursed medial expenses in that Petitioner's health insurance may not cover all expenses; therefore after consideration of all relevant factors pursuant to Section 452.340.1 and Rule 88.01, it is reasonable that the parties share such expenses, with Petitioner responsible for .75% and Respondent responsible for 25%.

### A.

This point alleges an abuse of discretion because the trial court refused to accept Laura's college related costs, as presented in her Form 14, as extraordinary expenses in determining child support for Laura. The early portions of Rule 88.01 set out the factors in determining the presumed child support amount, including the resources and needs of the child and the parents, the standard of living of the child if the marriage had not been dissolved, as well as the physical and emotional needs of the child. As applicable here, part (e) reads:

(e) the educational needs of the child. There is a rebuttable presumption that the amount of child support calculated pursuant to Civil Procedure Form No. 14 is the amount of child support to be awarded in any judicial or administrative proceeding for dissolution of marriage, legal separation, or child support. It is sufficient in a particular case to rebut the presumption that the amount of child support calculated pursuant to Civil Procedure Form No 14 is

correct, if the court or administrative agency enters in the case a written finding or a specific finding on the record that the amount so calculated, after consideration of all relevant factors, is unjust or inappropriate.

As the findings state, the oldest daughter, Laura is attending college at nearby Central Missouri State University, and is the recipient of numerous scholarships and financial aid. The trial court found unbelievable the amount of Laura's college related expenses listed on Form 14. Similarly, Susan, who's status as a high school student was most unclear—at one point, Mary's testimony showed Susan to be in alternative school, or in public school. Mary contests the court for failure to order sufficient support to help Laura with her college expenses, and, as will be discussed in part B. below, disputes the court not requiring Leon to pay Susan's anticipated college expenses, or other extraordinary expenses to allow her to graduate high school.

With regard to Laura's college expenses, the court found the expenses grossly overstated and that the two children, as well as Mary, were very poor money managers. Mary is correct in that case law points out the aim of Section 452.340 is to assist children of divorced parents in obtaining post secondary education with assistance from the parents. *DeCapo v. DeCapo*, 915 S.W.2d 343, 347—48 (Mo.App.1996). However, *De-Capo* also states that the trial court is in the best position to determine the needs of the child for college expenses, and the ability of the non-custodial parent to pay, but absent a manifest abuse of discretion, that determination will not be disturbed. *Id.* at 348–49.

Mary contends part of the aid Laura receives is in the form of loans, and as such, those amounts may· have been incorrectly considered by the court. This court in *Panettiere v. Panettiere*, 945 S.W.2d 533, 539—40 (Mo.App.1997), interpreted paragraph E of the Comments for Use to Form 14, as not allowing loans to be used in determining out-of-pocket student costs, since they "... merely delay the date of payment of the cost."[2] There is no showing by Mary that loan figures crept into the court's calculations. In fact, the trier of fact was within it's bounds and not guilty of an abuse of discretion in rejecting Mary's evidence, *Crews v. Crews*, 949 S.W.2d 659, 671 (Mo.App.1997), nor in failing to include the proposed college expenses in determining child support. *Gordon v. Gordon*, 924 S.W.2d 529, 533—34 (Mo. App.1996). As this court said in *Gordon*, the language of comment E, supra, does not require the judge to consider college expenses in determining support under Form 14. *Id.* at 533. In short, Mary's figures as to Laura's expenses in college were no more than guesses, which the court was not bound to accept. For the purposes of this motion, this decision was not in error.

### B.

■ Relying on *Leahy v. Leahy*, 858 S.W.2d 221, 227 (Mo. banc 1993), Mary asserts an abuse of trial court discretion in failing to award child support for Susan based on Susan's "anticipated college expenses." The Court in *Leahy*, quoting language in *Tuning v. Tuning*, 841 S.W.2d 264, 267 (Mo.App.1992), said consideration of college expenses need not wait until the child has entered college, but, "... there may be circumstances, where, unless those expenses are considered in advance, the child could not attend college." The use of the word "may" in the opinion shows the trial court has discretion whether to take up in a motion to modify anticipated college expenses. The facts here show no error in failing to include anticipated college costs for Susan. As pointed out earlier, the facts here were murky as to even Susan's anticipated graduation from high school. The evidence showed the child was having problems, and was ei-

---

2. Post-secondary educational expenses can be ordered by the court if it is determined by the parents or the court to be appropriate for the parents to contribute to the costs of such programs. To determine an appropriate amount, the court may consider annual tuition expenses, room and board expenses, including room and board expenses for a child residing in the home of one parent while attending school or during school recesses in excess of 30 days and other reasonably necessary expenses. *In addition, the court should consider scholarships, grants, stipends and other cost reducing programs available to the student....*

ther not in school, in high school taking remedial classes, or was in an alternative school. Part of the proposed expenses were for outfitting an apartment, even though there was no evidence where Susan would be attending school; and in fact, one of the colleges she was interested in, was a community college not far from Mary's home. The court was well within it's discretion to exclude Susan's anticipated college expenses from Form 14. *Gordon,* 924 S.W.2d at 533.

### C.

◼ Mary tells this court the trial court committed an abuse of discretion by not including Susan's average monthly expenses of $63.58 to take remedial classes, in computation of the total support amount. Mary contends this amount is necessary to enable Susan to graduate from high school. She relies on *Boudreau v. Benitz,* 827 S.W.2d 732, 735—36 (Mo.App.1992). *Boudreau* does not aid Mary. That particular case was in the Eastern District and allowed a trial court to consider special needs, psychological expenses, in addition to the guidelines in computation of child support. It was made clear that there must be a showing of actual expenses and, the addition of such expenses are in the discretion of the trial court. There was no evidence here as to the why, when, or where of these expenses. This point is denied.

### IV.

### A.

◼ The court made the award of increased child support of $525.25 per month per child retroactive to October of 1995, and allowed the total amount owing, $8,808, to be paid out by Leon at $200 per month. In this point Mary states the trial court miscalculated the arrearage, and that it should have been $11,474.56. The trial court did not disclose how it calculated the amount in arrears. Mary's explanation in her brief as to how the trial court's figure is incorrect and how her figure is correct, is incomprehensible. Therefore this point is denied.

### B.

Mary contends that even if the arrearage is $8,808, the payments of $200 a month are insufficient and should be increased, otherwise these payments may stretch beyond the time the youngest child, Susan, is emancipated. No abuse of discretion having been shown, this point is denied.

### V.

◼ The next point taken up is Mary's assertion of trial court error in expressing the amount of child support on a per child basis rather than a lump sum amount. In April 1997, the Circuit Court entered judgment based on the Commissioner's recommendations, which awarded $525.25 per month per child. In September of that same year, this court handed down *Shiflett, v. Shiflett,* 954 S.W.2d 489 (Mo.App.1997), on which Application to Transfer was denied on November 25,1997. *Shiflett* held, "the requirement that child support be paid as a total amount, and not per child is evident from a review of how child support is determined using Form 14", and "Form 14 does not anywhere indicate that this amount (child support) should be allocated evenly per child." *Id.* at 492—23. The *Shiflett* rationale was that the "amount due for two children under the Schedule is not double that due if the parties have one child. . . ." *Id.* at 493.

In the case at bar, there is no question but that the total amount of ordered monthly support, $1,050.50, was the correct amount of support. (This amount does not contemplate the issue of college expenses discussed, supra). The effect of *Shiflett* is procedural, and therefore prospective. Here, the total amount is deemed correct. Therefore, pursuant to Rule 84.14, the court affirms the total child support award of $1,050.50, but amends the judgment to delete the language of $525.50 per child.

### VI.

◼ Mary presented evidence of legal fees of over $5,300 for time spent until the date of trial. A good portion of her lawyer's time sheets arose in the preliminary part of the case where Leon's torpor was due to

previous counsel's failure to file an answer. Mary's attorney spent considerable time responding to Leon's request for extra time to file an answer, and then to his being allowed to file his motion to terminate maintenance late. A substantial amount of her attorney's time was spent enforcing discovery. The trial court award allowed Mary a total of $750 of her fees to be paid by Leon. Section 452.355 allows the trial court to consider all relevant factors including the financial resources of both parties to order fees for maintaining and defending proceedings under Section 452.300 to .415. The "other relevant factors" mentioned in the statute will vary on a case-by-case basis and no certainty of result can be projected. *Kieffer v. Kieffer*, 590 S.W.2d 915, 919 (Mo. banc 1979). The trial court, as an expert, has great discretion in the award of attorney fees—a party's ability to pay is merely one of the relevant factors. *Tracy v. Tracy*, 961 S.W.2d 855, 865 (Mo.App.1998). To be successful on appeal, the appellant must show the order of fees is against the logic of the circumstances and be arbitrary and unreasonable. *Mistler v. Mistler*, 816 S.W.2d 241, 256 (Mo.App.1991). The fact that the trial court awards less than the amount billed by counsel is not ipso facto indicative of an abuse of discretion. *Budzinski v. Budzinski*, 632 S.W.2d 527, 530 (Mo.App.1982).

Mary's income was just under $26,000 after working two jobs. Leon had $85,000 income. Mary has few assets ($30 in the bank) other than the equity in her house. A substantial amount of Mary's attorney's pretrial time was spent attempting to enforce discovery, attempting to thwart both Leon's attempt to late file an answer and his attempt to terminate maintenance. Attorney time was spent counseling Mary on the problems created when the youngest daughter stopped attending school. Also, her attorney spent some time in responding to a letter Leon wrote to the children shortly after he was served with process. This letter told the girls their mother would be getting less, would not receive maintenance and would have to pay her own litigation costs. "One factor to consider in awarding attorney fees to a party is the extent to which the other party's conduct required the expense of at-torney's fees." *In the Marriage of T.B.G v. C.A.G.*, 772 S.W.2d 653.

This court concludes the award of $750 in attorney's fees constituted an abuse of discretion. In view of the relevant factors in § 452.355 that the attorney fee award should be $2,500. *Garrett v. Citizens Savings Association*, 636 S.W.2d 104, 112 (Mo.App.1982). Leon had superior economic resources, while Mary's economic means were slender. This court has the power to enter the judgment the trial court should have entered. Rule 84.14; *Street v. Stepp*, 782 S.W.2d 124, 126 (Mo.App.1989). The additional attorney time spent on the matters enumerated in the previous paragraph sustain the $2,500 award. *Id.*

The judgment of the trial court is affirmed in all respects except as to the following amendments to the following paragraphs of the judgment, which are to read as follows:

1) Respondent's motion to modify child support is sustained and Petitioner's motion to terminate maintenance is denied. Previous maintenance of $400.00 per month is reduced to $325.00 per month.

3) Petitioner shall pay to Respondent child support in the amount of $1,050.50 per month for the support of Laura and Susan Crawford beginning February 1, 1997. Petitioner shall pay to Respondent retroactive child support in the amount of $8,808. Execution is stayed on that judgment so long as Petitioner pays the additional sum of $200 per month beginning February 1, 1997 until said judgment is paid in full. The Court Administrator is appointed trustee for said payments, and Petitioner shall execute an income assignment in the amount of $1,250.50.

7) Petitioner shall pay to Respondent, attorney's fees in the amount of $2,500, and in default thereof let execution issue. Each party shall pay their own costs, and the filing fee is assessed against Respondent.

All Concur.