**Michelle J. WORD, Respondent,**

v.

**Eugene C. PETERSON, Appellant.**

**No. WD 58511.**

Missouri Court of Appeals,
Western District.

Oct. 23, 2001.

James A. Rynard, Kansas City, for appellant.

Nancy Stuver Wallingford, Kansas City, for respondent.

Before ROBERT G. ULRICH, Presiding Judge, PATRICIA BRECKENRIDGE, Judge and JOSEPH M. ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

Appellant Eugene C. Peterson ("Father") appeals from a judgment entered in the Circuit Court of Jackson modifying the decree of dissolution between Father and Respondent Michelle J. Word ("Mother") by increasing Father's monthly child support obligation.

On January 21, 1987, the Circuit Court of Jackson County entered its decree dissolving the marriage between Father and Mother. Two children had been born of the marriage: Lauren Peterson, born October 2, 1980, and Kristen Peterson, born August 16, 1983. The court awarded the

parties joint legal custody of their two daughters and placed physical custody of the children with Mother. The court ordered Father to pay a total of $200.00 per month in child support. On February 24, 1994, the court entered an order modifying the decree of dissolution by increasing Father's child support obligation to $425.00 per month.

On December 2, 1998, Father filed a *pro se* Motion to Modify Decree of Dissolution as to Child Support. Father sought to decrease his child support obligation. On January 23, 1999, Mother filed her Answer and Counter Motion to Increase Child Support and For Attorney Fees.

The circuit court conducted a hearing on both motions on December 2, 1999. The court first heard Father's motion. When Father finished presenting his evidence, the court stated that it was going to deny his motion.

The court next heard Mother's motion. After Mother finished presenting her evidence, the court stated that it was denying the motion to increase child support. The court then said:

> If I compare your Form 14's, even if I impute the gifts that the children receive, fortunately for the children that they receive, as income to the mother, your presumed support still doesn't drop to 20 percent below what it is now. You're able-bodied, you're capable of earning a living, you're voluntarily unemployed. There's not a reason why your child support should be decreased.
>
> I think it's wonderful that Lauren wants to go to college. I hope she succeeds in college. I don't think that the Respondent, based on his current financial circumstances, is able to contribute to college expenses, nor do I expect that he would ever be willing to contribute to the college expenses.

> I am entering an award of child support against Mr. Peterson in favor of—or rather in attorney's fees against Mr. Peterson in favor of counsel for mother in the amount of $2,500.00, and in default of that judgment execution will lie. And you're both free to go.

On February 22, 2000, the circuit court entered its Judgment of Modification. In its judgment, the trial court found that Mother's costs in raising the minor children had increased substantially since 1994. The court noted that Lauren was attending college and that Kristen was a high school student in private school. The court adopted Mother's Form 14 calculations, found that the presumed child support amount reflected therein was not unjust or inappropriate, and increased Father's child support obligation to $757.00 per month. The court found that both parties were capable of paying their own attorneys' fees and costs and denied attorneys' fees to either party. Father brings three points on appeal from that judgment.

 "We will sustain the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law." *Drury v. Racer*, 17 S.W.3d 608, 610 (Mo.App. E.D.2000) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). " 'We afford the trial court deference with regard to its determinations of credibility and view the evidence in the light most favorable to its decision.' " *Haden v. Riou*, 37 S.W.3d 854, 860 (Mo. App. W.D.2001) (quoting *Morton v. Myers*, 21 S.W.3d 99, 104 (Mo.App. W.D.2000)). "When determining child support, the court's function is to protect the best interests of the child." *Harrison v. Harrison*, 28 S.W.3d 500, 501 (Mo.App. E.D.2000).

■ In one of his points, Father argues that the circuit court erred in entering a written order that "was significantly at odds with its pronouncements from the bench." Father contends that the trial court should not be allowed to deviate from its statement that the court was "denying the motion to increase child support." Father contends that the trial court should not be allowed to rule one way from the bench and to later enter a judgment containing an opposite ruling.

■ A circuit court in a civil case has the authority to revise its decision until it enters its final judgment. *Woodman Engineering Co. v. Licking Constr. & Dev. Corp.*, 786 S.W.2d 178, 181 (Mo.App. W.D. 1990). Rule 74.01(a) provides "[a] judgment is entered when a writing signed by the judge and denominated 'judgment' or 'decree' is filed." A trial court's oral comments are not part of the court's judgment and may not be used to oppose, dispute, or impeach the judgment or as a substitute for the judgment. *St. Pierre v. Director of Revenue*, 39 S.W.3d 576, 578–79 n. 5 (Mo. App. S.D.2001); *See also Jantz v. Brewer*, 30 S.W.3d 915, 919 (Mo.App. S.D.2000) ("A trial court's oral comments cannot be used as a substitute for or to dispute its record entry or judgment.") (internal quotation omitted); *Thornton v. Deaconess Med. Center–West Campus*, 929 S.W.2d 872, 873 (Mo.App. E.D.1996) (quoting *Bonadonna v. Bonadonna*, 322 S.W.2d 925, 927 (Mo. 1959)) (" 'Oral comments may be considered for the purpose of explaining or supporting a record entry, but they cannot be used as a substitute for or to dispute it.' ").

Accordingly, while it is lamentable that the circuit court made comments at the hearing that may have led Father to believe that Mother's motion was going to be denied, we cannot find error in the trial court's decision to render a judgment that may have differed from its statements at the hearing. Point denied.

■ In another of his points, Father claims that the circuit court abused its discretion by including Lauren's college expenses in calculating his child support obligation. Father contends that the weight of the evidence indicated that he was unable to contribute to those expenses. Father also argues that the evidence did not establish that the college expenses were substantial and continuing.

■ The circuit court has the discretion to consider anticipated college expenses in entertaining a motion to modify a decree of dissolution. *Crawford v. Crawford*, 986 S.W.2d 525, 531 (Mo.App. W.D.1999). The circuit court is best situated to determine the needs of the child for help with college expenses and to assess the ability of the non-custodial parent to help pay those expenses, and absent a manifest abuse of discretion that determination will not be disturbed. *Id.*

In making his argument, Father relies almost entirely on the statements made by the trial court at the hearing that the court did not think that Father, "based on his current financial circumstances, is able to contribute to the college expenses." Father claims that based on that finding the trial court could not properly have included college expenses in calculating his child support obligation. As noted, *supra*, a trial court's oral comments are not part of the court's judgment and may not be used to oppose, dispute, or impeach the judgment or as a substitute for the judgment. *St. Pierre*, 39 S.W.3d at 578–79 n. 5. Accordingly, the trial court's comments are not relevant to determining whether the trial court properly considered Lauren's college expenses in calculating the support amount.

"College expenses are properly considered as bearing on the amount of child support." *Webb v. Fox*, 978 S.W.2d 16, 21 (Mo.App. W.D.1998). "A trial court may include post-secondary educational expenses in a child support award by either including the expenses in the Form 14 calculation as provided in Civil Procedure Form No. 14, Comments for Use ... or considering the expenses in rebutting the presumed child support amount as unjust and inappropriate and adding an appropriate amount to the award."[1] *Id.*

The trial court calculated Father's child support obligation by adopting the Mother's Form No. 14 and awarding the presumed child support amount reflected therein. Those Form No. 14 calculations included $637.00 in extraordinary child-rearing expenses for money contributed by Mother to Lauren's college costs after subtracting amounts paid through Pell grants, student loans, and Lauren's summer income.[2] Accordingly, the trial court utilized one of the proper means for considering college expenses in assessing the non-custodial parent's child support obligation.

While Father points to his own testimony that he was currently unemployed and suffers from depression in asserting that the weight of the evidence reflected that he could not contribute to Lauren's college expenses, given the $2,500.00 per month in income imputed to Father,[3] the trial court could reasonably have determined that he had the ability to contribute to Lauren's college expenses. The record simply does not support Father's contention that the trial court abused its discretion in including the $637.00 in college expenses as extraordinary child-rearing costs in its Form No. 14 calculations.

Father also contends that Mother failed to establish that Lauren's college expenses were substantial or continuing. Father claims that the evidence failed to establish that Lauren was going to continue to attend college after her first semester or that Mother was not going to receive gifts from her brother or parents that might cover any college expenses.

The evidence presented established that Lauren was currently enrolled at and at-

---

1. Comment A to the Directions for applying Line 6e (Other extraordinary child-rearing costs) in filling out Form 14 states:

 Post-secondary educational expenses and private or parochial elementary, middle and high school expenses are not included in the schedule of basic child support obligations; therefore, these expenses may be included in Form No. 14 as an "other- extraordinary child-rearing cost" if the parents agree or the court orders that the parents contribute payment of these expenses.

 * * *

 An order may include the cost of tuition, room and board, books, fees and other reasonable and necessary expenses. In determining the amount of these expenses, scholarships, grants, stipends and other cost-reducing programs available to the child should be considered.
 *CAVEAT:* A finding by the court or administrative agency that the presumed child support amount is unjust or inappropriate is not necessary where the parent obligated to pay support is also ordered to pay any percentage of the other extraordinary child-rearing costs of the children who are the subject of the proceeding.

2. We note that amounts paid through student loans could have been properly included in the extraordinary child-rearing expenses for college. "This court in *Panettiere v. Panettiere*, 945 S.W.2d 533, 539–40 (Mo.App.1997), interpreted paragraph E of the Comments for Use to Form 14, as not allowing loans to be used in determining out-of-pocket student costs, since they 'merely delay the date of payment of the cost.' " *Crawford v. Crawford*, 986 S.W.2d 525, 531 (Mo.App. W.D.1999).

3. The sufficiency of the evidence supporting the imputation of this income to Father is addressed in our discussion of his final point, *infra.*

tending Tennessee State University, and Mother testified that Lauren was doing well there. From this evidence, the trial court could reasonably infer that Lauren was going to continue to attend college.

In the event that Lauren drops out of college or otherwise fails to satisfy the relevant statutory requirements, Father will be afforded adequate relief under § 452.340.5. Section 452.340.5 provides: "If the child is enrolled in an institution of vocational or higher education not later than October first following graduation from a secondary school . . . and so long as the child enrolls for and completes at least twelve hours of credit each semester . . . and achieves grades sufficient to re-enroll at such institution, the parental support obligation shall continue until the child completes his or her education, or until the child reaches the age of twenty-two, whichever first occurs." [4]

With regard to his claim that other individuals might help to contribute to Lauren's college education, those contentions are mere conjecture on Father's part. While the record reflects that Mother's brother had given her $4,000.00 in August 1999, to help with Lauren's college expenses, no evidence was presented that she would be receiving further contributions from brother or anyone else.

In sum, the trial court did not abuse its discretion in including Lauren's college costs in its Form No. 14 calculations. Point denied.

In his final point, Father contends that the trial court erred in adopting Mother's Form 14 calculations because the evidence

adduced at the hearing established that Mother had additional monthly income that was not included in her stated gross monthly income. Father claims that Mother's testimony at trial clearly established that she had income that had not been included in those computations.[5] Father also argues that the evidence did not support imputing $2,500.00 per month in income to him.

 "We will set aside a judgment on the basis that it is against the weight of the evidence only with caution and with a firm belief that the trial court [sic] judgment is wrong." *Haden*, 37 S.W.3d at 860. " 'We will not substitute our judgments for that of the trial court absent a manifest abuse of discretion and will not disturb an award of child support unless the evidence is 'palpably insufficient' to support it.' " *Id.* (quoting *Holmes v. Holmes*, 878 S.W.2d 906, 909 (Mo.App. E.D.1994)).

On Line 1 of Form 14, the party filling out the form is instructed to enter an amount representing one-twelfth of the each parent's yearly gross income. The directions provide that:

> "Gross income" includes, but is not limited to, salaries, wages, commissions, dividends, severance pay, pensions, interest, trust income, annuities, partnership distributions, social security benefits, retirement benefits, workers' compensation benefits, unemployment compensation benefits, disability insurance benefits, veterans' disability benefits, military allowances for subsistence and quarters, and maintenance actually received.

---

4. "[T]he aim of Section 452.340 is to assist children of divorced parents in obtaining post secondary education with assistance from the parents." *Crawford v. Crawford*, 986 S.W.2d 525, 531 (Mo.App. W.D.1999).

5. In her brief, Mother fails to address Father's contentions on this point aside from directing this court to reference her arguments in opposition to Father's point related to college expenses. In so doing, Mother does not provide any argument in opposition to most of Father's claims.

Comment A to the directions for filling out Line 1 of Form 14 states, " 'Income' for purposes of computing the presumed child support amount consists of a financial benefit or money received by a parent that could have a positive impact on the parent's ability to support the parent's children."

On Mother's Form 14, which was adopted by the court, Mother indicated that her monthly gross income was $3,033.00. At trial, Mother testified that her yearly salary was $37,492.00, which translates to $3,124.00 per month. Accordingly, the Form 14 calculations failed to include $91.00 of her monthly income from her primary employment. In addition, Mother testified at trial that she was paid $400.00 per month for serving on the board of directors for a nursing home owned by her brother. These payments clearly constituted income for Form 14 purposes and should have been included in Mother's monthly gross income. Accordingly, the trial court erred in failing to include $491.00 of Mother's monthly gross income in its Form 14 calculations.

Father also contends that money provided by Mother's brother and parents to pay for Kristen's tuition at private school should have been included in Mother's monthly gross income. The testimony related to those gifts is convoluted as to the total amount received monthly, but it clearly reflects that neither the costs of Kristen's tuition nor the money gifted to pay for it were included in the Form 14 calculations.

While the circuit court may consider gift income in computing its Form 14 calculations, the decision whether to include those gifts is in the discretion of the court. *In re Marriage of Petersen*, 22 S.W.3d 760, 764 (Mo.App. S.D.2000). The record reflects that these gifts were made for the sole purpose of covering Kristin's

private school tuition. Educational expenses are not factored into the Schedule of Basic Child Support Obligations. Form 14, Comment A to the Directions for applying Line 6e (Other extraordinary child-rearing costs). Accordingly, if Mother respected the wishes of those making the gifts and used the money to cover private school expenses, that money was not available to Mother to meet the scheduled basic needs of the children. While the trial court could have included these gifts in Mother's gross income, it also had the authority to include the costs of Kristin's private school tuition as an extraordinary child-rearing expense in those calculations. *Id.* Since the private school expenses were not included as extraordinary child-rearing expenses in the Form 14 calculations, we cannot conclude that the circuit court abused its discretion in excluding the money gifted to Mother to cover those expenses from her monthly gross income.

With regard to Father's contention that the record did not support imputing $2,500.00 per month in income to him, "[t]he issue presented, when income is imputed to a party, is whether the evidence supports the amount of income imputed." *Honderick v. Honderick,* 984 S.W.2d 205, 212 (Mo.App. W.D.1999). Having reviewed the record, we find that the trial court's imputation of $2,500.00 per month in income to Father is well supported by the evidence. Father testified that he was in good health and that he had no medical condition that would prevent him from working. Father acknowledged that he had an above-average intelligence and had received a college degree. Father also recounted his work experience in the financial services industry. Finally, Father indicated that his average monthly income was $2,500.00 on an income and expense statement that he filled out in October 1999. This evidence sufficiently supported

the trial court's imputation of $2,500.00 per month in income to Father.

 While Father argues that the trial court should have accepted his testimony about his income from each of the preceding five years and averaged those numbers to establish the amount to be imputed to him, the trial court was well within its discretion to find that his testimony was not credible and to reject that testimony. *See Haden*, 37 S.W.3d at 862 ("[T]he trial court is free to disbelieve the testimony of any witness," and "[w]e give great deference to the trial court's ability to draw conclusions, and to weigh the credibility of witnesses, their sincerity, and character.").

Furthermore, in its judgment, the circuit court specifically found that Father "continues to be under employed." The record reflects that Father reduced his hours and took significant time off during the years preceding trial to take care of his mother, to defend against criminal charges for nonpayment of child support, and to defend against civil suits. The trial court was entitled to base its determination of the amount to impute to Father on what it found Father could earn by the use of his best efforts. *Id.* at 861. The record supports a finding that Father was able to work full-time and could make $2,500.00 per month utilizing his best efforts. Accordingly, the trial court did not err in imputing that amount of income to Father in its child support calculations.

Because we have found that the trial court erred in failing to include $491.00 of Mother's monthly gross income in its Form 14 calculations, we must reverse the award and remand the matter back to the trial court. On remand, the trial court should recalculate the presumed child support amount under Form 14 by including that $491.00 in Mother's monthly gross income, and the court must then determine whether the new presumed amount is unjust or inappropriate.

All concur.