**John Leavell WOFFORD, Appellant,**

v.

**June Langham WOFFORD, Respondent.**

**No. WD 55434.**

Missouri Court of Appeals, Western District.

May 11, 1999.

---

1. Son's pending "Motion to Strike [Daughter's] Brief," and Son's request for sanctions on appeal are denied.

Nancy Stuver Wallingford, Kansas City, for Appellant.

Jack Grate, Independence, for Respondent.

Before: LOWENSTEIN, P.J., and SPINDEN and HOWARD, JJ.

HOWARD, Judge.

John L. Wofford ("appellant") appeals from a decree of dissolution which ended his eleven-year marriage to June L. Wofford ("respondent"). Appellant contends that the trial court erred in its assessment of his child support and maintenance obligations and in its division of marital property, and by failing to place a time limitation on its award of maintenance to respondent.

Affirmed in part; reversed and remanded in part.

During the parties' marriage, appellant was employed as an engineer at Burns & McDonnell ("B & M"); respondent's responsibilities were that of homemaker and raising their only child, John Quince Wofford, III, who was born on July 16, 1987. Appellant filed a petition to end their marriage on January 2, 1996, and the decree of dissolution was entered on October 21, 1997. The decree of dissolution awarded the parties joint legal and physical custody of their son, and determined respondent to be the primary residential custodian of the child. In determining appellant's child support obligations, the trial court rejected the Form 14 calculations submitted by both parties. The court determined appellant's income to be $80,914.00 annually or $6,743.00 per month, and ordered appellant to pay $789.52 a month in child support. In addition, appellant was ordered to maintain health and dental insurance for the child.

The court also determined that, because of respondent's lack of employment history and marketable job skills, and the uncertainty of her immediate future employability, she would be imputed an income of $5.25 per hour or $901.00 per month. The trial court ordered appellant to pay her $1,000.00 per month in maintenance, and to pay for her health insurance, up to $180.00 per month.

In his first point on appeal, appellant claims that the trial court erred by including overtime compensation in its calculation of his child support obligation. Appellant contends that his employee classification no longer qualifies him for overtime compensation.

■ Appellant's claim is based upon a letter from B & M stating that an employee in appellant's position is no longer eligible for overtime. The letter was dated ten days after the entry of the decree of dissolution, and was submitted as an attachment to his motions for a new trial and for reconsideration of the decree of dissolution. These motions were overruled by the trial court, and appellant does not challenge the denial of the motions. What appellant does challenge is the decree itself, and the terms of the decree were fashioned from evidence which did not include the document at issue. We cannot review issues never offered in evidence nor included in the transcript on appeal. *Warren v. Drake,* 570 S.W.2d 803, 807 (Mo. App. W.D.1978). However, pursuant to our disposition of appellant's second point

on appeal, we are remanding the cause for the reception of further evidence, and appellant can properly introduce evidence on this issue on remand.

In his second point on appeal, appellant claims that the trial court erred by including certain employment benefits as part of his income for the purpose of calculating his child support obligation. Appellant contends that these benefits are unrelated to his present ability to pay child support.

 In its decree of dissolution, the trial court calculated appellant's annual income to be $80,914.00. The court prepared its own Form 14, in which it stated that its calculations were based upon a document prepared by B & M, and which presented the following summary of appellant's compensation package as of January 1997:

| Direct Cash Payments | |
| --- | ---: |
| Base Salary | $60,009 |
| Overtime | 5,740 |
| Bonus | 6,000 |
| EPP Dividend | 174 |
| | $71,923 |
| | |
| Stock Ownership | |
| Stock Purchased | $ 2,760 |
| Cash Contributed to Plan | 1,200 |
| | $ 3,960 |
| | |
| 401(k) Savings Plan | |
| Company Match | $ 1,144 |
| Special Discretionary Match | 763 |
| | $ 1,907 |
| | |
| Employee Benefits | |
| Health Plan | $ 3,027 |
| Life Insurance | 11 |
| Accidental Death & Dismemberment | 86 |
| Social Security | $ 4,146 |
| | $ 7,270 |
| | |
| Total Current Compensation | $85,060 |

It is clear from these numbers how the trial court arrived at appellant's annual salary. Subtracting the amount of Social Security ($4,146) from the total compensation ($85,060) leaves $80,914, the exact amount of income attributed to appellant in the court's own Form 14. Thus, the trial court included all aspects of appellant's compensation as income for the purposes of child support, with the exception of Social Security.

The employee benefits which the trial court included in calculating appellant's income for Form 14 purposes fall into the following three categories: the employee stock ownership plan (ESOP), B & M's contribution to his retirement plan, and the furnishing of insurance coverage. With respect to the latter two categories, *Farr v. Cloninger*, 937 S.W.2d 760, 764 (Mo.App. S.D.1997) held that it was not error to consider insurance coverage furnished to an employee as part of Form 14 income because it saved him an expense he would otherwise incur; and (2) it was error to include the employer's contribution to his retirement plan because there was no discernible way it would affect his present ability to pay child support.

Consistent with the holding in *Farr v. Cloninger*, the trial court in this case did not err by including the insurance coverage furnished to appellant in his Form 14 income, but did err in including B & M's contributions to his 401(k) plan. Were these the only two items at issue, we could affirm the trial court's judgment because the erroneous inclusion totalled $1,907, an amount that was offset by the fact that appellant testified at trial that his actual annual salary had been increased to $62,014, which was $2,005 more than the $60,009 annual salary attributed to him by the trial court, and thus the total amount would have been supported by a consideration of all the evidence.

██ However, there is also the issue of the ESOP, and the record is not sufficiently clear on whether appellant's participation in the ESOP affects his present ability to pay child support. We do not know to what extent the ESOP contributions at B & M are made by the employer or the employee, or whether the employee has present access to the contents of his ESOP account. ESOP contributions made by the employer and not accessible to the employee until he retires or otherwise leaves his employment are akin to the pension plan situation addressed in *Farr v. Cloninger*, and would not affect the obli-

gor's present ability to pay child support. On the other hand, if the employee is voluntarily contributing to the ESOP account from his own salary, and he has the option of ceasing those contributions within a reasonable time, the amount of those contributions could be redirected to satisfying his financial obligations under the decree of dissolution. Similarly, if an employee can currently withdraw and sell stock from his account, that too would relate to his present ability to pay child support. Given the record here, we must remand the cause to the trial court to receive evidence on the nature of the ESOP and then reconsider its award of child support. *Whitworth v. Whitworth*, 878 S.W.2d 479, 484–485 (Mo.App. W.D. 1994).

In his third point on appeal, appellant claims that the trial court should have deviated from the Form 14 guidelines and reduced his child support obligation in consideration of the considerable amount of time that the child will be in his custody pursuant to the "Joint Legal and Physical Custody Plan" incorporated into the decree of dissolution.

Although the trial court determined respondent to be the child's primary residential custodian, the decree of dissolution allowed for the child to be with appellant for a substantial portion of the year. The Joint Legal and Physical Custody Plan provides that the child is to stay at appellant's home overnight on Tuesdays and Thursdays, alternate weekends, and on certain holidays. In addition, appellant may take the child for a two-week summer vacation, and a one-week spring break visitation every other year. This means that the child spends more than six out of every fourteen days with appellant.

In *Stewart v. Stewart*, 988 S.W.2d 622 (Mo.App. W.D.1999), as in the case at bar, the children spent approximately six of every fourteen days with the child support obligor, and this Court concluded that the trial court abused its discretion by failing to take this allocation of time into account

in calculating the obligor's child support payments. *Id.* at 626–27. This case is also similar to *Stewart* in that both cases were tried in 1997, before Form 14 included the current line 11 adjustment based upon the number of days the party has custody of the child during the year. However, at the time both cases went to trial, the instructions for use of Form 14 provided that an adjustment to the presumed child support amount may be appropriate when the child spends substantial time with both parents. *Leone v. Leone*, 917 S.W.2d 608, 612 (Mo.App. W.D. 1996). Consequently, on remand, in addition to reconsidering the issue of child support in light of the questions surrounding appellant's overtime and ESOP, the trial court is also directed to reconsider the issue of child support in light of the substantial time which the child spends with appellant under the joint physical custody provisions of the decree of dissolution.

In his fourth point on appeal, appellant claims that the trial court erred in calculating his maintenance obligation by determining respondent's income to be minimum wage or $5.25 per hour. Appellant notes that, in her trial testimony, respondent stated that she was earning $9.50 an hour at her most recent job, which she had obtained through a temporary employment agency.

The trial court has broad discretion in determining the amount of maintenance to award a spouse in a dissolution action, and the appellate court will not interfere absent an abuse of discretion. *Graves v. Graves*, 967 S.W.2d 632, 638 (Mo.App. W.D.1998). We cannot conclude that the trial court abused its discretion in this case, in light of all the evidence received about respondent's wages. At trial, respondent testified that the temporary employment which was paying her $9.50 an hour was going to end in two weeks. Respondent further stated that, with her lack of skills, she didn't believe she could find another job that paid that well, and that

the basic pay scale available through her temporary agency was minimum wage. It is the prerogative of the trial court to determine the credibility of the witnesses, accepting or rejecting all or any part of the testimony. *R.W.H. v. D.M.H.*, 898 S.W.2d 144, 147 (Mo.App. E.D.1995).

■ Appellant also complains that the trial court awarded too much maintenance to respondent because the combined monthly amount of maintenance ($1,000.00), child support ($789.52), and health insurance which appellant was ordered to provide respondent exceeds the amount that respondent was asking for in her testimony at trial. Appellant cites portions of the trial transcript where respondent is asked if she is seeking $1,500.00 in maintenance and child support, and if that amount "would be sufficient," and respondent replies affirmatively in both cases.

■ It is not apparent from the transcript that respondent was including health insurance when she answered these questions. In any event, it is not necessarily an abuse of discretion for a trial court to award more maintenance than is asked for where there is evidentiary support for the additional amount. *Kalish v. Kalish*, 624 S.W.2d 531, 532 (Mo.App. E.D. 1981). Point denied.

■ In his fifth point on appeal, appellant claims that the trial court erred in assessing the maintenance award by failing to properly balance his ability to meet his needs while meeting those of respondent. Appellant contends that, after payment of the maintenance, child support, and respondent's health insurance ordered by the court, he is left with insufficient funds to meet his own expenses.

Appellant asserts that his take-home pay is $3,519.84 per month. Adding his annual bonus results in an additional $500.00 per month, resulting in a total of $4,019.84 per month. In addition, the trial court considered overtime pay of an additional $478.00 per month, since, as noted in appellant's first point on appeal, he failed to present evidence at trial that he was no longer eligible for overtime. Consequently, the trial court considered a total of $4,497.84 per month.

In its decree, the trial court ordered appellant to pay $1000.00 per month in maintenance, and $789.52 per month in child support. In addition, the court ordered him to pay for health insurance for respondent, up to a monthly total of $180.00. The total of these financial obligations is $1,969.52, which when subtracted from $4,497.84 per month leaves $2,528.32 in available income per month. In his brief, appellant explains that his monthly expenses will be $2,791.00 per month.

■ Courts must balance an obligor's ability to pay maintenance against the reasonable needs of the spouse seeking maintenance. *Wilburn v. Wilburn*, 801 S.W.2d 78, 80 (Mo.App. E.D.1990). It seems that the issue here is what income was considered by the trial court in assessing appellant's ability to pay maintenance. From our review of the trial court's child support calculations, we know that the trial court considered appellant's ESOP account and overtime wages in assessing his ability to pay a current child support obligation. Thus, we are remanding the case for further evidence on the nature of appellant's ESOP and the issue of whether he is still eligible for overtime, evidence which bears on the question of whether these compensation categories are properly considered in assessing the amount of his current obligations under the decree. If all or part of these categories were improperly included in the trial court's consideration of appellant's present ability to pay maintenance, it may necessitate a reconsideration of the amount of his maintenance obligation.

■ In his sixth point on appeal, appellant claims that the trial court erred by failing to place a time limitation on respondent's award of maintenance. Appellant

contends that an award of limited duration is appropriate because of respondent's testimony about her efforts to get into a school of radiology to become a radiology technician. At trial, respondent testified that she was one of about two hundred people who applied for openings in the two-year program, but she was not one of the fifteen people who were accepted.

■ A trial court has broad discretion in determining the duration of maintenance awarded in a dissolution action. *Test v. Test*, 872 S.W.2d 620, 623 (Mo.App. W.D.1994). Mere speculation as to the future condition of the spouse is an insufficient basis for limiting the duration of a maintenance award. *Polen v. Polen*, 886 S.W.2d 701, 704 (Mo.App. W.D.1994). Because of the justification required for maintenance awards of limited duration, the judicial preference is for awards of unlimited duration. *Id.*

In this case, the trial court heard evidence that respondent applied once to a two-year radiation technology program but was not accepted, and that she retained an interest in pursuing this career path. Given the uncertain status of respondent's career plans, the trial court did not abuse its discretion by deciding against a maintenance award of limited duration. Point denied.

■ In his seventh point on appeal, appellant claims that the trial court erred by failing to consider the conduct of the parties in its rulings on maintenance and the division of property. Specifically, appellant refers to respondent's testimony that she had been hugged and kissed by another man with whom she was spending time. Appellant has not carried his burden of establishing that the trial court abused its discretion on this ground in its maintenance and property determinations. Point denied.

■ In his final point on appeal, appellant contends that the trial court erred in its valuation of the marital home, which was awarded to respondent in the decree of dissolution. The trial court stated, in the decree, that there was approximately $40,000 of equity in the home, and that the home was encumbered by a total of $124,-860 in loans. Combining these numbers, it appears that the trial court assessed the value of the home at approximately $164,-860. Appellant contends that this was error, because at trial he introduced an appraisal which placed a value of $175,000 on the home.

When respondent was called as a witness, she was asked about the appraisal, and she testified as follows about the valuation:

A. I think it's a little high, but it's probably ballpark, I mean, to start.

Q. It's not way out of the ballpark?

A. No.

Q. And you know they did some comps, including a house that had just sold down the block?

A. Right.

Q. Was that house truly comparable to yours?

A. It had an in-ground pool. It had a finished horse barn. It had another equipment shed, barn, tool shed – not shed, but it's a big barn. It had two buildings, corrals, and wood fencing and fenced off throughout, which ours does not have.

■ The trial court is entitled to believe or disbelieve the testimony of either party concerning the valuation of property in a dissolution proceeding, and can disbelieve expert testimony. *Sinopole v. Sinopole*, 871 S.W.2d 46, 49 (Mo.App. E.D. 1993). For purposes of the division of property, an owner is competent to testify as to its value. *Id.* The trial court's valuation of the marital home was within the range of conflicting value evidence presented at trial, and was thus within the trial court's discretion to resolve conflicts in evidence. *Id.* Point denied.

The judgment of the trial court is affirmed in part, and reversed and remanded

in part for the trial court to receive further evidence on the nature of appellant's ESOP and the issue of appellant's eligibility for overtime, and then reconsider its awards of child support and maintenance as directed in this opinion.

All concur.