Christine Ann PONCE, Appellant,

v.

Armando Borja PONCE, Respondent.

No. WD 61022.

Missouri Court of Appeals,
Western District.

March 25, 2003.

Curtis G. Hanrahan, Jefferson City, MO, arguing on behalf of Appellant.

Thomas Mitchell Dunlap, Fulton, MO, arguing on behalf of Respondent.

Before JAMES M. SMART, JR., P.J., ROBERT G. ULRICH and RONALD R. HOLLIGER, JJ.

JAMES M. SMART, JR., Judge.

Christine Ann Ponce ("Mother") appeals the trial court's judgment granting Armando Borja Ponce's ("Father's") motion to modify child support.

### Factual Background

The parties' marriage was dissolved on October 15, 1985. On the date of dissolution, the couple's three children were ages six, three, and two. The dissolution decree ordered, *inter alia,* that Father pay $1,000.00 per month to Mother for the support of the children. Twelve years later, in September of 1997, pursuant to administrative order and by the parties' consent, the court ordered Father's child support payment increased to $1,800.00 for the two younger children. The eldest child had been emancipated earlier and was no longer covered by the child support order. The two younger children were then still in high school and living with Mother full time.

Father filed this motion to modify four years later on August 22, 2001, asking the court to eliminate his obligation to pay child support or, alternatively, to reduce the amount of child support to $450.00 per month, to be paid directly to the children at $225.00 each. Father based his motion on the following allegations of changed circumstances: (1) the children were now attending college; (2) Father was paying all educational costs for the children; (3) the amount of time the children were spending in Mother's home was reduced; (4) the children were both working and contributing to their own expenses; and (5) Father was voluntarily contributing to the children's expenses on a monthly basis. Mother did not file a countermotion.

The two youngest children, Timothy, age 20, and Stefanie, age 19, had graduated from high school and were full-time resident college students. Timothy was in his second year at the University of Missouri—Columbia. Stefanie had just completed her first semester at Central Missouri State University in Warrensburg.

A hearing on the motion to modify was held on November 29, 2001. The evidence showed that the educational expenses for both children were being paid voluntarily by Father. No order had been issued by any court requiring Father to pay for the children's college education. There was evidence that, when the children were younger, the parties had entered into a verbal agreement that Father would pay for the children's college education. There was also evidence that Mother had agreed she would be willing to accept only $200.00 to $300.00 per month in child support while they were attending college.

Stefanie was staying at her mother's home in Fulton four days out of every week. Timothy customarily spent only a couple of days a month at his mother's while in school and stayed at his mother's home while on school breaks. The summer prior to trial, however, Timothy resided at the University while taking summer classes. Although Stefanie's college room and board had been fully paid, she traveled from Warrensburg home to Fulton on Thursday nights and stayed with her mother until Monday morning every week. She followed this schedule due to her part-time job in Fulton.

Timothy had obtained scholarships that paid for a large part of his expenses at the University of Missouri. He also had a job at the college bookstore. Father was paying all of Timothy's college expenses not covered by his scholarships, amounting to approximately $1,000.00 per semester. Father had also paid for Timothy's automobile, and sent Timothy $200.00 in spending money each month. Father was arranging to pay the extra costs for Timothy to study in Japan from March 28, 2002, to July 28, 2002.

Father also voluntarily paid for all of Stefanie's tuition, room and board, and books at college, which amounted to approximately $4,300.00 per semester. Father paid for Stefanie's automobile, and provided her with $200.00 a month in spending money. There was evidence that both children were capable of handling their own money; that neither parent monitored the money the children earned at their jobs; and that the children used that money at their own discretion for their own personal expenses.

The court found that the Form 14 presumed correct amount of child support to be paid by Father was $1,707.00, but specifically found that the presumed child support amount was unjust and inappropriate as to both children. The court then set the child support amount for Timothy at $500.00 per month to be paid directly to Timothy. With regard to Stefanie, the court ordered child support set at $854.00 per month, payable $500.00 directly to Stefanie and $354.00 to Mother.

Mother did not file a countermotion asking the court to order Father to continue paying the children's college education costs, but she did ask the court to do so at trial and indirectly in her motion for new trial. The court failed to issue such an order.

Mother appeals, arguing that the court erred in (1) reducing the child support amount based upon the fact that Father voluntarily pays the children's post-secondary educational expenses without also ordering Father to continue to pay those educational expenses, and (2) in ordering

all or part of the child support to be paid directly to the children.

## Standard of Review

This court will not disturb an order modifying a child support obligation unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Shiflett v. Shiflett*, 954 S.W.2d 489, 492 (Mo.App.1997) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). The reviewing court defers to the trial court's determinations of credibility and views the evidence in the light most favorable to its decision. *Haden v. Riou*, 37 S.W.3d 854, 860 (Mo.App.2001). An award of child support is within the sound discretion of the trial court. *Id.* The appellate court will interfere with the award only if the trial court abused its discretion by ordering an amount that is "against the logic of the circumstances" or is "arbitrary or unreasonable." *Ricklefs v. Ricklefs*, 39 S.W.3d 865, 869 (Mo.App. 2001).

## Deviation from Form 14 Presumed Correct Child Support Amount

First, Mother argues that the trial court erred in reducing the child support obligation below the Form 14 presumed correct amount because there was no showing that the presumed correct amount was unjust or inappropriate. She contends that the trial court failed to consider all the statutory factors in arriving at this decision.

In a proceeding for modification of child support, the provisions of the original judgment "may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable." § 452.370.1, RSMo 2000.[1] When the court determines that there has been such a showing, the statute then requires that "[t]he child support shall be determined in conformity with criteria set forth in section 452.340 and applicable supreme court rules." § 452.370.2.

Missouri Supreme Court Rule 88.01 establishes a two-step process to determine child support. *Schriner v. Edwards*, 69 S.W.3d 89, 92 (Mo.App.2002). Under the first prong, the court must determine and find for the record the presumed correct child support amount using Form 14. *Id.* at 92–93. In step two, the trial court may rebut the presumed correct child support amount as being unjust or inappropriate after consideration of all relevant factors. *Id.* at 93. "Step two permits the trial court to exercise its broad and sound discretion in the final determination of child support awards." *Id.*

Any deviation from the Form 14 amount must be supported by the evidence and a specific finding on the record that the presumed correct amount is unjust or inappropriate. See *Umphenour v. Umphenour*, 831 S.W.2d 764, 767 (Mo.App. 1992). Mother points out that Rule 88.01 requires the trial court to examine all relevant factors in arriving at an amount for child support, including the following specific statutory factors from section 452.340.1:

(1) The financial needs and resources of the child;

(2) The financial resources and needs of the parents;

---

1. All statutory references are to Revised Statutes of Missouri, 2000, unless otherwise noted.

(3) The standard of living the child would have enjoyed had the marriage not been dissolved;

(4) The physical and emotional condition of the child, and the child's educational needs;

(5) The child's physical and legal custody arrangements, including the amount of time the child spends with each parent and the reasonable expenses associated with the custody or visitation arrangements; and

(6) The reasonable work-related child care expenses of each parent.

Mother claims that the evidence rebuts the first four of these specific factors. Mother's brief does not address the final two statutory factors. Based on her analysis of the evidence, Mother concludes that the trial court "clearly did not properly examine each of those factors based upon the evidence adduced at trial." Mother's argument ignores the requirement that this court must defer to the trial court's determination of credibility and view the evidence in the light most favorable to its decision. *Haden*, 37 S.W.3d at 860.

■ The trial court clearly did consider all relevant factors, including the statutory factors. The court made specific, detailed findings with regard to the financial resources and needs of the parents; the financial needs and resources of the children; the physical and emotional condition of the children; the children's educational needs; and the children's physical and legal custody arrangements, especially with regard to the amount of time the children spend with each parent and the reasonable expenses associated with the custody or visitation arrangements. The court did not specifically address "the standard of living the children would have enjoyed had there been no dissolution" in those exact terms, but consideration of that factor is implied in the findings.

Based upon the trial court's own Form 14 calculations with regard to Father's income, Mother's income, Mother's expenses, and the amount Father pays for the children's health insurance, the court found that the presumed correct amount of child support to be paid by Father was $1,707.00. The court then found that the presumed child support amount was unfair, unjust, and inappropriate, because it was excessive when combined with the college costs being paid by Father. Based on the fact that "Timothy is fully capable of managing his own funds; spends little time at his mother's home; and will be 20 years old on January 18, 2002," the court set the child support amount for Timothy at $500.00 per month, beginning on the date that Timothy leaves for his trip to Japan, with the full amount to be paid directly to Timothy.

Noting that Stefanie lives with Mother at least four days a week, the court ordered child support for Stefanie set at $854.00 per month, payable $500.00 directly to Stefanie and $354.00 to Mother. The court concluded that it was "unfair, inappropriate, and unjust" to pay the full $854.00 to Mother in light of the college costs of Stefanie being paid by Father. The court arrived at the $354.00 figure to be paid to Mother based upon Mother's own expense statement.

Mother asserts that the trial court was in error when it found the amount to be unjust and inappropriate based solely upon the fact that Father was voluntarily paying the children's college education expenses. She states: "For the trial court to have found, as it did, that these voluntary payments, which it declined to order Father to continue to pay, serve as sufficient cause to rebut the presumed amount of support under Rule 88.01 and Form 14 is an abuse of discretion."

■ Although the court specifically stated that the presumed amount was excessive when combined with the college costs being paid by Father, it is clear from the court's judgment that the decision was based, also, upon other statutory factors. The trial court is not required to specifically state all the relevant factors which caused the Form 14 amount to be unjust or inappropriate. *See Rule 88.01(b)* and section 452.340.9. The court made a specific written finding that the presumed correct amount, after consideration of the relevant factors, was unjust or inappropriate. The specific relevant factor noted by the court was the fact that Father was currently voluntarily paying the college education expenses of the children. "Unlike a Form 14 calculation, there is no mandatory worksheet or formula to be used in determining whether a Form 14 amount is unjust or inappropriate. Consequently, the trial court in making a rebuttal determination may take into consideration non-Form 14 factors." *Woolridge v. Woolridge,* 915 S.W.2d 372, 379 (Mo.App.1996).

■ "An appellate court will not substitute its judgment for that of the trial court on whether the presumed child support amount was unjust or inappropriate providing there is credible evidence to support the trial court's beliefs." *In re Marriage of Gerhard,* 985 S.W.2d 927, 930 (Mo.App.1999). Despite Mother's contention, the court did not abuse its discretion in deviating from its Form 14 calculation because there was sufficient evidence to support the downward departure. "An abuse of discretion will be found only where the trial court's ruling is clearly against the logic of the circumstances or is arbitrary or unreasonable." *Id.* An independent review of the record reveals that the trial court thoroughly considered all the facts and circumstances in the case, and there is no indication that the court's ruling is against the logic of the circumstances or is arbitrary or unreasonable.

### Failure to Order Payment of College Education Expenses

■ Mother next contends that the court misapplied the law by using Father's voluntary payment of college expenses as its basis for finding the presumed amount unjust or inappropriate without also ordering Father to continue to pay those college expenses.

Although Mother did not file a counterclaim asking the court to order Father to continue paying the children's college education costs, she did ask the court to do so at trial[2] and somewhat indirectly in her motion for new trial.[3] The court failed to issue such an order. In the court's docket entry of the judgment, the following statement was entered: "[T]he court finds that Respondent has and continues to pay all college education expenses, after scholarships for both children and so expects to continue. With his consent *the Court so orders.*" (Emphasis added.) This order does not appear in the formal Judgment Modifying Decree of Dissolution, however.

---

2. Without objection, the following question was asked of Mother on direct examination by Mr. Hanrahan:

 Q. And ... you're asking that [Father] be ordered now since it is not the subject of any court order to pay for the room, board and tuition of the two children that are subject to this action; is that correct?
 A. Yes.

3. In *Leahy v. Leahy,* 858 S.W.2d 221, 225 (Mo. banc 1993), the movant failed to specifically request college expenses in the motion to modify. The appellate court rejected the respondent's contention that the trial court erred in considering this issue, noting that Rule 55.33(b) allows issues not raised by the pleadings to be tried by the express or implied consent of the parties. *Id.* at 226.

The court's note on the bottom of the court's own Form 14, stating: " *Education costs not included but to be paid by paying parent. *No* court order." The asterisk refers back to line 6.e.: "Other extraordinary child rearing costs. (Agreed by parents or ordered by court)."

 This court in *Shiflett v. Shiflett*, 954 S.W.2d 489, 493 (Mo.App.1997), found that pursuant to Rule 88.01(e), the court must consider the child's educational needs in determining the amount of child support. A parent is not automatically liable for the cost of a child's post-secondary education, however, as evidenced by the basic Form 14 calculation, which does not include educational expenses. *Id.* *Shiflett* states, however, that "[t]he trial court must ... consider educational expenses, including college costs, in determining what child support should be awarded, and if appropriate should adjust the presumed child support amount to accommodate college costs." *Id.* The court in *Hosack v. Hosack*, 973 S.W.2d 863, 874 (Mo.App.1998), reiterated this point and delineated the factors to be considered when determining what, if any, college education expenses to include in child support awards:

"[1] the financial ability of the father; [2] the ability and capacity of the child for college work; [3] the nearness of the child to his [or her] majority; [4] whether the child is self-supporting or not, and [5] the father's willingness to provide for such education, as shown by some agreement or other indication on his part."

*Id.* (quoting *Shiflett*, 954 S.W.2d at 494).

Here, there is no dispute as to whether Father will pay the college education expenses for the children. Evidence presented at trial revealed that the parties had entered into a verbal agreement when the children were younger that Father would pay for the children's college education. Father testified at trial and stated in his brief that he *will* pay for the children's college expenses. The only point of contention is whether or not the court should have *ordered* Father to pay the expenses. Father contends that this question was answered by the court in its note at the bottom of its Form 14. Mother, on the other hand, believes the court misapplied the law by not specifically ordering Father to pay the children's college expenses.

 Where the trial court determines it is appropriate to adjust the presumed child support amount to accommodate college costs, the adjustment can be done in one of two ways: (1) by including such expenses on line 4e of the Form 14 calculation as an extraordinary expense, in which case the amount of child support owed by both parents would be adjusted upward; or (2) by finding the Form 14 amount unjust and inappropriate and then adding a just amount for college expenses to the child support award. *Shiflett*, 954 S.W.2d at 493–94. This second method is applicable to cases where the court may not believe that both parents should be required to provide for these costs by including them in the Form 14 calculation. This may occur, for example, where "one parent has agreed to shoulder all or most of the burden of the expenses, or because one party could not afford to pay such expenses, or for other proper reasons." *Id.* at 493.

Mother relies upon *Umphenour v. Umphenour*, 831 S.W.2d 764, 768 (Mo.App. 1992),[4] to support her argument, but the circumstances of this case are actually

---

**4.** In *Umphenour,* the court rejected the father's argument that he should be allowed credit against the presumed child support because he was also ordered to pay an additional amount for college expenses. 831 S.W.2d at 768.

more on point with those in *Hosack v. Hosack.* In *Hosack,* this court found that the trial court should have ordered Mr. Hosack to pay for college educational expenses. 973 S.W.2d at 874. Like Father in the case at hand, Mr. Hosack was financially able to pay some or all of these costs, the son was able to perform college work, and he was not capable of supporting himself. *Id.* The *Hosack* court surmised that the trial court did not award money for college because of the father's "[v]ery commendabl[e]" professed willingness to voluntarily pay. *Id.*

At oral argument, the father in *Hosack* stated he was currently paying for his son's college tuition, but pointed out that on the date of trial, no children were enrolled in or attending college. *Id.* For that reason, he argued, "[i]t ma[d]e more sense for the trial court to take the father at his word and, in the event he breaches his agreement to pay for his eldest son's education, modify the child support payment on the basis of facts then existing." *Id.* The court rejected this argument, stating: "[I]t is doubtful whether a court could modify the decree to include college expenses where, as here, the expenses were anticipated at the time of the dissolution but not provided for, as a change of circumstance is required for modification." *Id.* at 875. Even though the father was fulfilling his promise by paying the institution directly, the court concluded that "[i]t would be appropriate to include an order so requiring in the decree on remand or to make such other payment arrangement as the court finds best on remand...." *Id.*

As in *Hosack,* we believe that the uncertainty is not in the best interests of the parties or the children. The trial court clearly believed that it was in the children's best interest for Father to pay their college education expenses and that it was within Father's ability to do so. The court

failed to include this provision in its formal order, however, which may have been an oversight in view of the language on the court's docket entry: "with his consent the court so orders." In any event, because of the need for clarification, we remand the case to the trial court with instructions to include an order requiring the payment of these expenses. *Id.*

### Payment of Support Directly to the Children

Finally, Mother asserts that the trial court erred in ordering the child support to be paid in whole or in part directly to children. She contends that there was insufficient evidence to warrant that change because the children continued to reside in her home for substantial periods of time. Mother acknowledges that such an arrangement is within the discretion of the trial court, but argues that it amounts to an abuse of discretion under the circumstances of this case.

Mother contends that the trial court "order[ed] direct payment of child support without a compelling reason to do so." Mother notes that Timothy resides with her when not in school and Stefanie resides with her over half the week when in school and at all times when not in school. Mother continues to incur fixed expenses in providing them a home to live in during these times. Mother argues that Father has the financial means to see to it that the children have a home when they are not actually in school, especially given that the children rarely spend time at his home.

There is no question that the court may order child support to be paid directly to the children. If a child is enrolled in a secondary or post-secondary institution, "the child or parent obligated to pay support may petition the court to amend the order to direct the obligated parent to make the payments directly to

the child." § 452.340.5, RSMo 2000; *Mason v. Mason*, 873 S.W.2d 631, 637 (Mo. App.1994). "There is no requirement that payments for education be made to the ex-spouse.... The court can ... order this aspect of support to be paid directly to the child or to the institution rather than to the former spouse." *Hosack*, 973 S.W.2d at 875.

Here, there was evidence that both children were capable of handling their own money; that neither Mother nor Father monitored the money the children earned at their jobs; and that the children used that money at their own discretion for their own personal expenses.

The court ordered the child support paid directly to Timothy based upon its thorough examination of his living arrangements and his proven ability to properly handle money. The court explained that "Timothy is fully capable of managing his own funds; spends little time at his mother's home; and will be 20 years old on January 18, 2002." The court noted also that "Timothy needs some money, but Respondent pays him $200.00 a month without a court order and there is no evidence that Petitioner pays Timothy any money." The court also considered Timothy's trip to Japan in arriving at this determination.

With regard to Stefanie, the court properly considered her living arrangements, as well, and specifically stated that because she was spending four nights a week at her mother's, it was awarding only a portion of the child support to be paid directly to Stefanie. The court stated: "Stefanie continues to be in [Mother's] home, eats there, sleeps there, and [Mother] should receive a part of the [ ] child support." The court ordered child support for Stefanie set at $854.00 per month, payable $354.00 to Mother and $500.00 directly to Stefanie "for her own use."

The court stated, further, that in making this determination, it had considered Mother's Exhibit 1, detailing her various living expenses. The children's portion of those expenses amounted to approximately $492.00. The court found that "a small contribution ... per month toward [those expenses] is appropriate for Stefanie, but not for Timothy." The judgment states, additionally, that the court "assumes that [Mother] will continue to assist both children, as custodial parent."

The court thoroughly examined the circumstances of the case before arriving at the decision to order all or part of the child support to be paid directly to the children. "Only where the trial court's ruling is clearly against the logic of the circumstances or is arbitrary or unreasonable will an abuse of discretion be found." *Buchanan v. Buchanan*, 828 S.W.2d 946, 949 (Mo.App.1992). Mother's contention that the court's order with regard to paying all or part of the support directly to the children was an abuse of discretion and not supported by the evidence is without merit. Point denied.

## Conclusion

For the foregoing reasons, we remand with instructions to include an order in the judgment requiring Father to pay the children's post-secondary educational expenses. In all other respects, we affirm the judgment.

ULRICH and HOLLIGER, JJ., concur.