**Roberta M. FORDE, Respondent,**

v.

**Jeffrey R. FORDE, Appellant.**

No. ED 85920.

Missouri Court of Appeals,
Eastern District,
Division One.

April 25, 2006.

John P. Wagner, St. Louis, MO, for appellant.

Rober A. Zick, Washington, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

Jeffrey R. Forde ("Father") appeals an amended judgment modifying the dissolution decree between Father and Roberta M. Forde ("Mother") in which the trial court decreased Father's monthly child support obligations and increased Father's obligation to pay children's educational expenses.

In his appeal, Father argues the trial court erred in: (1) requiring Father to pay an increased amount of his children's college expenses; (2) ordering Father to pay a disproportionate amount of his children's college costs; (3) ordering Father to repay Mother for medical expenses; (4) failing to consider Mother's retirement contributions in determining Mother's income for the purpose of calculating child support obligations and in averaging Mother's income over a number of years; and (5) ordering Father to post a $50,000 bond to secure payment of child support. We agree that the trial court erred in calculating Mother's gross income for the determination of child support by failing to include Mother's voluntary retirement contributions in the calculations and we reverse on that point. All other points are affirmed.

### Statement of the Facts and Proceedings Below

Mother and Father, who had two minor children, were granted a decree of dissolution on August 1, 1997. In the decree of dissolution, the trial court ordered Father to: (1) pay support for the minor children in the amount of $825.00 per child per month; (2) maintain medical insurance for the children and pay 50% of medical expenses not covered by insurance; and (3) pay one-half of the children's college education expenses, within certain guidelines. In addition, the trial court divided property and, *inter alia*, awarded Father certain

stock and savings bonds "for the benefit of the two minor children."

On June 16, 2003, Father filed a motion to modify his support obligation. Father alleged that Mother's income had significantly increased and his income had significantly decreased since the divorce decree was entered. Father alleged he could not pay the current support amount or his one-half share of the children's college expenses. Mother filed an answer to Father's motion, denying that her income had increased and Father's had decreased. Mother further asserted "as an affirmative defense" that Father was in arrears for his share of the children's medical expenses.

The trial court held a hearing on December 3, 2004. The parties introduced evidence regarding their employment and incomes. Father testified that he was employed as a technical recruiter working for a recruiting firm, Cap Gemini, earning approximately $125,000 per year at the time he and Mother divorced. After Father left Cap Gemini, he became an independent contractor. In 2002, as an independent contractor, Father's tax return indicated an income of only $6,345. Beginning in June 2002, Father sought employment for nearly one year before he obtained a position with Envision, a recruiting firm. In 2003, Father received a base salary of $20,000 plus bonuses. In 2004, Father's base salary increased to $40,000.

Mother introduced evidence that Father spent money far in excess of his claimed 2002 and 2003 income. During cross examination, Father testified that he had taken a trip to Hawaii within the past two to four years. Father also admitted that he took a cruise to the Caribbean in 2002. Father testified to having multiple charges on his credit cards for concert tickets, which Father claimed to have resold. Father also acknowledged multiple credit card charges for collectible post-cards he purchased over the internet. Father admitted to having multiple checking account withdrawals of thousands of dollars each made during 2002, though he could not explain the reasons for the withdrawals.

Mother also introduced evidence regarding her own income. Mother testified that she was employed with Westport Pools ("Westport"), which builds commercial swimming pools, and Midwest Pool Management Corporation ("Midwest"), which manages commercial swimming pools. Mother testified that her income was contingent upon the success of the businesses, and, in the past few years, Westport won bids on very large projects, which she declared "highly unusual." Mother also stated that due to recent competition in the industry, Westport lost bids on projects and was not doing as well as it had in the past.

Mother's 1996 income, which was used to calculate the child support amount in the divorce decree, was $44,852.00. However, by 2000, her income had increased to $92,000. In 2001, Mother's income decreased again to $43,133. In 2002, it was $120,347. In 2003, it was $188,291. Mother testified that she received $60,000 bonuses in 2002 and 2003, but that she did not anticipate receiving a bonus for 2004.

The parties also adduced evidence regarding U.S. Savings bonds that Father cashed-in during his time of unemployment. In the original dissolution decree, the trial court awarded the savings bonds to Father in the property division of the divorce decree, as follows: "U.S. Savings bonds . . . that he holds for the benefit of the two minor children."

Father's parents purchased the savings bonds for the children. Nevertheless, Father cashed-in a total of $25,682.78 in one child's bonds and $20,197.00 in the other child's bonds. Some of the savings bonds

had a notation saying "for your future education" or "held for his future education." Father testified that the purpose of the savings bonds and other assets was to fund the children's college education. Father further stated that his parents stipulated that the bonds were to be used strictly for college education expenses. Father indicated that he intended to "get the money back to the kids" by paying for his share of their college education.

Mother introduced evidence, over Father's objection, that Father failed to reimburse her for the children's medical expenses that were not covered by insurance. Mother testified that she carried health insurance for the children at a cost of $290.92 per month. Mother introduced, over Father's objection, the children's medical and dental bills that were not covered by insurance. The total amount of Father's share of the medical bills was $6,181.46.

After the conclusion of the hearing, the trial court issued its judgment. Upon Father's request, the trial court amended the judgment for reasons not at issue in this appeal. In its amended judgment, the trial court found that a substantial and continuing change of circumstances had occurred since entry of the divorce decree. The trial court found that at the time of the divorce, Father earned a significantly higher income than Mother, but now Mother had a significantly higher income than Father.

The trial court found that Father's evidence of his income was not credible, because of the significant expenditures made by Father during the years he claimed to be making very little money. The trial court found that Father spent nearly $200,000 in 2002, though he claimed that he made only $6,345 on his tax returns. Furthermore, the trial court found that Father spent thousands of dollars on concert tickets "and other extravagances" in 2003. The trial court determined that some of the expenditures could be explained by gifts from Father's parents, but that Father still spent significant sums that were not accounted for.

In its calculation of the child support obligations of the parties, the trial court rejected both Father's and Mother's Form 14 calculations. Instead, the trial court created its own Form 14 calculations. In developing its own Form 14, the trial court used each of Father's and Mother's estimates of their own earnings, in which they each averaged their income over a number of years. In Mother's estimate, Mother failed to include $11,000 she voluntarily contributed to a retirement account in 2002 and $12,000 she voluntarily contributed to her retirement account in 2003.

The trial court determined that Father should pay $853 per month for two children or $621 per month for a single child. The trial court also found Father to be $9,105 in arrears for his child support obligation.

The trial court also concluded that Father was capable of paying for the children's college expenses, based on its determination that Father was not completely forthright about his income. The trial court ordered Father to pay 100% of the college expenses up to the amount of the bonds Father cashed-in: $25,682.78 for one child and $20,197.00 for the other. Once Father paid expenses up to that amount, Father would be responsible for 1/3 of the children's educational expenses, with certain restrictions.

The trial court also ordered Father to pay the amount he was in arrears for the children's medical expenses: $6,181.46. The trial court also noted that the original decree required Father to carry health insurance for the children, but he had not.

The trial court further ordered Father to pay one-half of the children's past health insurance premiums that were paid by Mother, totaling $1,386.58. The trial court ordered Mother to carry health insurance for the children in the future.

Finally, the trial court ordered Father to post a $50,000 bond to secure payment of the children's college expenses and other child support as per Mo.Rev.Stat. Section 452.344.[1] Father appealed.

### Standard of Review

We will not disturb an order modifying a child support obligation unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *In re Marriage of Woodson*, 92 S.W.3d 780, 785 (Mo. banc 2003) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). We will interfere with the award only if the trial court abused its discretion by ordering an amount that is "against the logic of the circumstances" or is "arbitrary and unreasonable." *Ponce v. Ponce*, 102 S.W.3d 56, 60 (Mo.App. W.D. 2003). We view facts and reasonable inferences in the light most favorable to the trial court's decision and defer to the trial court's superior ability to determine the credibility of witnesses. *Abbott v. Perez*, 140 S.W.3d 283, 290 (Mo.App. E.D.2004).

We affirm the judgment of the trial court under any reasonable theory supported by the evidence. *Carey v. Carey*, 84 S.W.3d 469, 473 (Mo.App. E.D.2002). We are primarily concerned with the correctness of the trial court's result, not the route taken by the trial court to reach the result. *Id.*

### Discussion

#### A. Allocation of College Education Expenses

As Father's first two points both regard the trial court's award of college expenses, we will address Father's first two points together. In Father's first point, he argues that the trial court erred in requiring Father to pay 100% of the children's college expense up to the amount of the bonds Father cashed-in. More specifically, Father argues that the trial court erred because the bonds were Father's separate property and the trial court placed the bonds in trust for the children. In Father's second point, Father argues that the trial court erred in disproportionately allocating the cost of college expenses, in that it ordered Father to pay "more of the overall cost" of the children's education, even though the trial court found Mother's income was significantly higher than Father's.

The trial court has discretion to consider anticipated college expenses in entertaining a motion to modify a decree of dissolution. *Word v. Peterson*, 57 S.W.3d 894, 898 (Mo.App. W.D.2001). The trial court is best situated to determine a child's need for help with college expenses and assess the ability of the non-custodial parent to help pay those expenses. *Id.* Absent a manifest abuse of discretion, the trial court's determination will not be disturbed. *Id.*

Where the trial court determines it is appropriate to adjust the presumed child support amount to accommodate college costs, the court may add a just amount for college expenses to the child support award. *Ponce v. Ponce*, 102 S.W.3d 56, 63 (Mo.App. W.D.2003). The trial court may do this in cases where the trial court determines that only one parent

1. All statutory references are to RSMo.2004 unless otherwise noted.

should bear the cost of the college expenses. *Id.*

We should note that a parent is not automatically liable for the cost of the child's post-secondary education. *Ponce,* 102 S.W.3d at 63. There are five factors to be considered when determining what, if any, college education expenses to include in a child support award: (1) the financial ability of the non-custodial parent; (2) the ability and capacity of the child for college work; (3) the nearness of the child to the age of majority; (4) whether the child is self-supporting; (5) the non-custodial parent's willingness to provide for such education, as shown by some agreement or other indication on his or her part. *Id.*

In this case, the parties presented no evidence that the children would be incapable of college work or would be able to support themselves. Likewise, the children have not yet reached the age of majority. Thus, we focus on Father's financial ability to pay and Father's willingness to provide for the children's college expenses.

Here, the parties presented much evidence regarding Father's ability to pay. The trial court found that Father was fully capable of paying for the child support and college expenses it awarded. The trial court noted that, although Father claimed only approximately six-thousand dollars of taxable income in 2002, Father spent nearly two-hundred thousand dollars from his credit cards and checking accounts. Additionally, in 2003, when Father claimed a taxable income of only twenty-eight thousand dollars, he spent thousands of dollars on concert tickets and travel. Furthermore, although Father testified that he received gifts and cashed-in some bonds, the trial court determined that Father spent significant sums beyond the gifts and bonds. The trial court found that

Father's evidence of his income was not credible and he was financially able to pay the children's college expenses. The trial court is in the best position to make a determination concerning a parent's financial ability to assist with college expenses. *McGowan v. McGowan,* 43 S.W.3d 857, 869 (Mo.App. E.D.2001). In light of the substantial evidence of Father's spending, the trial court's finding that Father was able to pay was not an abuse of discretion.

Moreover, Father's testimony indicates that he agreed to pay for the children's education with the bonds. At trial, Father testified that the bonds at issue were titled in his and the children's names with a notation on the bond certificates saying that the bonds were to be used "for future education." Father further testified that when he cashed-in the bonds, he planned to repay the children by paying for their education up to the amount of his obligation. He also testified that he understood that the purpose of the bonds was to "pay the college tuition at the time the kids would go to school." Father admitted that the bonds were not to be used by the children for any purpose other than education.

In *Ponce,* a father was paying for his children's college expenses when the motion to modify was heard. *Ponce,* 102 S.W.3d at 61. The trial court failed to order the father to continue paying for the college expenses, presumably relying on the father's promise to pay. *Id.* at 62. The court concluded that, regarding the father's payment of college expenses, "uncertainty is not in the best interests of the parties or the children." *Id.* at 64. Similarly here, even though Father testified that he planned to repay the bonds up to his obligation, it was appropriate for the trial court to include this in its order. Furthermore, in light of the evidence regarding Father's finances, the trial court

did not abuse its discretion by increasing Father's responsibility for education expenses.

Father argues, in his first point, that the trial court erred in determining that the bonds were held in trust for the benefit of the children. Father cites *B.J.D. v. L.A.D.* for the proposition that the trial court cannot order marital or separate property to be placed in trust for minor children. 23 S.W.3d 793 (Mo.App. E.D.2000). While we do not necessarily disagree with this assertion, this case has no application here. Regardless of the trial court's reasoning, we affirm a correct judgment upon any reasonable theory supported by the evidence. *Carey*, 84 S.W.3d at 473. As we noted above, the evidence fully supports the trial court's award of educational expenses.

In his second point, Father argues that the trial court ordered him to pay a disproportionate amount of the college expenses because it ordered him to pay the full cost of the college expenses up to the amount of the bonds, and one-third of the cost thereafter. Here, the trial court specifically determined that Father had the ability to pay these expenses. Moreover, Father admitted that the bonds were intended for the children's education and Father testified that he would "repay" the children for the bonds by paying for their education. Points one and two are denied.

### B. Health Insurance and Uninsured Medical Expenses Reimbursement

In his third point, Father contends that the trial court exceeded its jurisdiction by ordering Father to reimburse Mother for the children's health insurance premiums and uninsured medical expenses. More specifically, Father argues that the issue of reimbursement of medical expenses was not raised in Mother's pleadings, because Mother raised the issue as an affirmative defense and did not file a separate motion. Finally, Father contends that he did not try this issue by consent because he objected to evidence related to this issue.

A party may include a counterclaim in an answer. See *Sloan–Odum v. Wilkerson*, 176 S.W.3d 723 (Mo.App. E.D. 2005) (reversed to give party leave to add counterclaim to answer). A counterclaim must contain: (1) a short and plain statement of the facts showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief to which the pleader claims to be entitled. Rule 55.05. We look to the substance, not the denomination, of the pleading, in order to determine its legal character. *Weber v. Weber*, 908 S.W.2d 356, 359 (Mo. banc 1995). We thus intend to "avoid the unjust consequence of denying a pleading because it is mislabeled." *Id.* We must give all pleadings their most liberal construction and accord all reasonable inferences deducible from the facts stated. *McBee v. Gustaaf Vandecnocke Revocable Trust*, 986 S.W.2d 170, 172 (Mo. banc 1999).

Here, Mother included in her amended answer a short and plain statement of facts showing that she was entitled to reimbursement for health insurance and uninsured medical expenses: "5. [Father] has failed to properly reimburse [Mother] for *unreimbursed medical expenses and medical insurance*, as required by the initial Judgment of Dissolution of Marriage herein." (emphasis supplied). Mother's amended answer also stated: "WHEREFORE, [Mother] prays that . . . [Father] be required to pay current his child support and his share of *unreimbursed medical expenses and medical insurance costs* in such amounts as shall be proven by [Mother]." (emphasis supplied). Although Mother referred to this issue in her answer as an "affirmative defense," the substance of the pleading was suffi-

**530**

cient to put Father on notice that Mother was claiming he failed to reimburse her for his share of the children's medical expenses.

Furthermore, liberally reading the facts which Mother averred, the issue of "health insurance premiums" clearly falls under "unreimbursed medical expenses and medical insurance." This is especially true because Mother referred to the initial Judgment of Dissolution of Marriage, which required that, "[Father] shall maintain medical insurance on the minor children.... Each party is ordered to pay 1/2 of any sums for medical, dental, optometric, and orthodontic expenses not covered by insurance."

Point denied.

## C. Voluntary Retirement Contributions

In his fourth point, Father contends that the trial court erred in failing to include Mother's retirement contributions when it calculated her income for the purpose of determining child support.

■ The directions for determining gross income for purposes of Form 14 state that "gross income" includes, *inter alia*, "salaries, wages and commissions." In Missouri, courts have held that parties may exclude from income contributions made by an employer to a party's retirement account that are inaccessible by the party until retirement. *Wofford v. Wofford*, 991 S.W.2d 194, 197–98 (Mo.App. W.D.1999). On the other hand, if the employee is voluntarily contributing to the retirement account from his or her own salary, and has the option of ceasing those

contributions within a reasonable time, the contributions should be included in the gross income calculation. *Id.* at 198. This is because the amount of the contributions could be redirected to satisfy child support obligations. *Id.* See also *McGowan*, 43 S.W.3d at 862 (inclusion of 401k contributions into gross income).

■ The trial court accepted both Mother's and Father's calculations of their own income. Father claims that Mother failed to include $12,000.00 she contributed to her retirement plan in 2003. Father also argues that Mother failed to include $11,000 she contributed to a 401k account for 2002. Father refers us to Mother's 2002 and 2003 W–2 forms, which were introduced at trial. However, Father failed to include the documents in the record on appeal.

Mother does not deny that she failed to include voluntary contributions to retirement accounts in her calculation of gross income that was accepted by the trial court.[2] Therefore, Mother's voluntary contributions to her retirement account should have been included in the calculation of her gross income. See *Wofford*, 991 S.W.2d at 198. Point granted. We reverse and remand for the trial court to recalculate Mother's gross income to include Mother's voluntary contributions to retirement accounts.

## D. Averaging of Mother's Income

In his Fourth point, in addition to the argument we addressed above, Father also contends that there was no substantial evidence to support averaging Mother's in-

---

**2.** Instead, Mother argues that the trial court had the discretion to include this amount in her income, citing the following Form 14 directions: "Overtime compensation, bonuses, earnings from secondary employment, recurring capital gains, prizes, retained earnings and significant employment related

benefits may be included, in whole or in part, in 'gross income' in appropriate circumstances." See *McGowan*, 43 S.W.3d at 862. This section does not refer to voluntary contributions to a retirement account and Mother does not explain in what way it should apply to this situation.

come over a four year period because there is no evidence that Mother's salary will decrease to the amount she made in 2000. More specifically, Father argues that Mother's 2001 income of $43,133 does not reflect her present income capacity.

■ An award of child support is within the sound discretion of the trial court. *Loomis v. Loomis,* 158 S.W.3d 787, 791 (Mo.App. E.D.2005). A court may consider past, present and anticipated earnings capacity in determining a parent's ability to pay child support. *Thill v. Thill,* 26 S.W.3d 199, 207 (Mo.App. W.D. 2000). Averaging of income is appropriate unless there is evidence that it does not reflect a parent's current earnings capacity. *Id.* We give deference to the trial court's ability to judge the credibility of witnesses. *Loomis,* 158 S.W.3d at 791. Thus, we will not disturb an award of child support unless the evidence is "palpably insufficient" to support it. *Thill,* 26 S.W.3d at 207.

■ Here, Mother presented evidence that, prior to 2003, her income from her salary was based on a $45,000 base salary plus a bonus dependent upon the companies' success that year. Mother testified that in 2003 and "a year or two prior to that," Westport had unusually large projects, which resulted in her higher income. Mother stated that she did not anticipate that Westport would have "big projects" in 2004. Mother testified that increased number of projects was "highly unusual" for Westport. Mother further testified that she had received a $60,000 bonus in 2002 and 2003 from Midwest Pools, but that she would not receive a bonus from Midwest Pools for 2004. This evidence supports a finding that Mother's yearly earnings fluctuate. Thus, it was not an abuse of discretion for the trial court to average Mother's yearly income for four years in order to determine her child support obligation.

### E. $50,000 Bond

■ In Father's final point on appeal, Father contends that the trial court erred when it ordered Father to post a $50,000 bond to secure payment of his child support obligation under Section 452.344.1. Father's sole argument that the trial court erred in ordering the bond is predicated on Father's argument that the trial court erred because the basis of the bond was the trial court's erroneous conclusion that the savings bonds were held by Father in custodianship for the children. Section 452.344 expressly provides that a trial court may require a bond "upon entry of an order for support." Mo.Rev.Stat. Section 452.344.1. Because the trial court's order to Father to pay the children's college expenses was one of child support, it was authorized under Section 452.344 to order Father to post bond to ensure payment of the support. Point denied.

### Conclusion

We reverse and remand to the trial court with instructions to recalculate Mother's gross income by including her voluntary contributions to her retirement account in the calculations. In all other respects, the judgment is affirmed.

MARY K. HOFF, P.J., and CLIFFORD H. AHRENS, J., Concur.